# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGINIA RAILWAY AND POWER COMPANY v. M. J. LELAND.

### October 1, 1925.

1. APPEAL AND ERROR—*Contributory Negligence—Collision Between a Street Car and a Truck—Statement in Writing of the Particulars of Contributory Negligence—Point Raised for the First Time on Appeal.*—In the instant case, an action for personal injuries arising out of the collision between a street car and a truck, defendant contended that plaintiff was not entitled to recover because the accident was the result of contributory or concurring negligence. Plaintiff claimed that as the record did not show that the statement in writing of the particulars of his contributory negligence was filed as required by section 6092 of the Code of 1919, the appellate court could not consider this defense. Counsel for the defendant asserted that the particulars of the contributory negligence was filed before the trial but was omitted from the record by inadvertence of the clerk. However this may be, the case was tried as though the particulars of the contributory negligence was a part of the record. And the instructions asked for by the plaintiff, and given by the court, recognize contributory negligence as a proper defense in the case.

   *Held:* That it was too late to raise the objection to the pleading for the first time on appeal.

2. APPEAL AND ERROR—*Conflicting Evidence—Conclusiveness of Verdict.*—On conflicting evidence the verdict of the jury settles the conflicts in favor of the successful party.

3. NEGLIGENCE—*Last Clear Chance—Foundation of the Doctrine.*—The foundation of the doctrine of last clear chance is that the parties are guilty of concurring negligence, and there must be some condition, circumstance, or superadded fact which one of the parties saw, or by the exercise of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party, and the obligation of discovering the last clear chance is mutual.

4. NEGLIGENCE—*Last Clear Chance—Burden of Proof.*—One relying on the doctrine of the last clear chance has the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care, after his peril was discovered, there was in fact a last clear chance to save him.

5. STREET RAILROADS—*Collision with Truck—Last Clear Chance—Case at Bar.*—In the instant case, an action for personal injuries incurred when defendant's street car struck the automobile in which plaintiff was riding, plaintiff and his companion, before starting the automobile, looked back and saw the car going in the same direction as they were, about fifty or sixty feet behind them. In order to pass a parked car, the automobile had to turn on to the street railway track. The street car struck the automobile and plaintiff was injured. The street car had the right of way superior to the automobile, and the motorman had the right to presume that the driver of the automobile would protect himself. The occupants of the automobile, with full knowledge that the street car was coming behind them, did not look back or give any sign that they were not going to give the right of way to the street car. They could have speeded up and gotten off the track.

   *Held:* That the evidence established that plaintiff's injuries were the result of carelessness in driving upon the street car track and not paying any attention to their safety or the street car that they knew was approaching, and, that the motorman did not have a last clear chance to save them from the result of their carelessness.

6. LAST CLEAR CHANCE—*Superadded Facts—Time after Discovery of Plaintiff's Danger—Case at Bar.*—In an action for damages for personal injury arising out of a collision between a street car and an automobile where the plaintiff claimed under the last clear chance doctrine, there must be evidence of some kind to show that the plaintiff could not or would not exercise care for his own safety, and there must be sufficient time and opportunity, after the discovery or duty to discover the plaintiff's danger from his own negligence, for the motorman to save him. And in the instant case plaintiff failed to prove that the motorman knew or should have known that the driver of the automobile could not or would not exercise care for the safety of the automobile, and there was no evidence to show that the motorman failed to exercise reasonable care to stop the street car after the plaintiff's danger became apparent.

7. FORMER ADJUDICATION OR RES JUDICATA—*Statement of Doctrine.*—The judgment of a court of concurrent jurisdiction, directly upon the point, is a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court. Briefly stated, the doctrine of *res judicata* is that an existing final judgment, or decree rendered upon the merits, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all their actions or suits in the same or any other judicial tribunal of concurrent jurisdiction on the points and matters in the first suit.

8. FORMER ADJUDICATA OR RES JUDICATA—*Plea of Res Judicata—Estoppel by Judgment.*—The plea of *res judicata*, the plea of estoppel by judg-

ment, and evidence to show the estoppel by judgment, are based upon similar principles of law, the conclusiveness of the judgments of the court, and the effect of a judgment as estoppel, but they are different forms of procedure, and the one that is appropriate to. a particular case, must be determined by the rules of pleading.

9. FORMER ADJUDICATA OR RES JUDICATA—*Collision between Street Car and Automobile—Judgment in Action for Damages to the Automobile as Bar to Action for Personal Injuries.*—In an action for personal injuries sustained in a collision between a street car and automobile, the defendant company filed two special pleas, one of *res judicata* and the other of estoppel by judgment, setting up a judgment for the defendant company in an action by plaintiff and his partner for injury to the automobile, arising out of the same accident.

*Held:* That as the judgment in the action for injury to the automobile determined that the joint negligence of the plaintiff and his partner was the proximate cause of the collision, it was conclusive of any right of recovery of either or both of them in any other action based upon the same cause of action; and that defendants special pleas were improperly stricken out.

10. PLEADING—*Puis Darrein Continuance—Time of Filing.*—Pleas of matter *puis darrein* continuance at common law were construed very strictly, because at common law a defendant could only plead one plea, and if anything happened between the continuances which would be a better answer to the declaration than the plea already pleaded, he was allowed to plead it by way of substitution for the plea pleaded, provided he alleged that it occurred since the last continuance. He could not plead the plea as a matter of right.

11. PLEADING—*Several Pleas—Puis Darrein Continuance.*—In Virginia a defendant may plead as many several matters, whether of law or fact, as he may see fit, and if the matter arose since the last continuance, the plea setting it up is not substitutional and does not waive all other defences. The statute allowing the defendant to file as many pleas as he desires, together with the liberal practice of amendments to the end that a case may be tried according to the very right, gave the defendant the right to file its plea of *res judicata,* although plaintiff claimed that the plea was filed too late and did not aver that the facts stated occurred since the last continuance.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Venable, Miller, Pilcher & Parsons*, for the plaintiff in error.

*Jas. G. Martin & Bro.*, for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

M. J. Leland, plaintiff in the trial court, together with A. P. Carnohan and T. J. Morley, constituted a partnership doing business in the city of Norfolk as the Farmers Exchange. The concern owned a Ford truck by means of which they delivered produce in the city to their customers. On the 25th day of January, 1922, about 2:40 o'clock P. M., Carnohan and Leland, two of the partners, drove the truck to a point on the east side of Granby street between Freemason street and College Place, for the purpose of delivering a crate of eggs. The truck was parked nearly in front of the Norfolk Hotel while Leland got out and delivered the crate of eggs to Cotes' restaurant about thirty feet south, and Carnohan who was driving the truck remained with it. After he had delivered the eggs, he returned to the truck and both he and Carnohan looked back and saw a street car on the south bound track of the street railway, about fifty or sixty feet behind them, moving south. The plaintiff got back into the truck and the truck started south down the street, turning a little to its left to pass a parked motor truck and thus straddling the nearest rail of the Virginia Railway and Power Company's south bound car track. When the truck reached a point opposite Gregory's Florist shop, the street car ran into the rear of the truck, damaging it very badly, and inflicting personal injuries upon Leland.

The partners brought suit for the damage to their truck, and Leland brought a separate suit for his personal injuries in the Law and Chancery court of the city of Norfolk against the Virginia Railway and Power Company. The first suit of the partnership for damages growing out of the accident was tried by a jury that rendered a verdict in their favor against the defendant company; whereupon the defendant moved the court to set aside the verdict of the jury and grant it a new trial, because the verdict was contrary to the law and the evidence; and to enter final judgment for the defendant. After argument and consideration, the court, at its June term, 1922, sustained the defendant's motion and entered final judgment in its favor.

At the April term, 1923, the suit of Leland against the defendant, for personal injuries growing out of the accident, came on for trial by jury and resulted in a verdict in favor of Leland for $1,000.00. The defendant moved the court to set aside the verdict and grant it a new trial, because of errors of the court in the course of the trial, and because the verdict was contrary to the law and the evidence, and for judgment in its favor as the evidence did not justify a verdict for plaintiff. The motion of the defendant was overruled by the court and judgment for $1,000.00 in favor of plaintiff against the defendant entered, whereupon the defendant applied for a writ of error which was granted and the case is before this court for review of the errors assigned.

[1] The contention of the railway company is that the plaintiff is not entitled to recover because the accident was the result of contributory or concurring negligence. Leland claims that as the record does not show that the statement in writing of the particulars of his contributory negligence was filed as required by section 6092, Virginia Code, 1919, this court should not con-

:sider this defense.    Counsel for the defendant asserts that the bill of particulars of contributory negligence as required by statute was filed before the trial but was omitted from the record by inadvertence of the clerk. However this may be, the case was tried as though the bill of particulars was a part of the record, and the instructions asked for by the plaintiff, and given by the court, recognizes contributory negligence as a proper defense in the case, and it is too late to raise this objection to the pleading for the first time in this court.

[2] The plaintiff's case was based upon the theory of the last clear chance, and it is conceded that upon that doctrine alone the verdict of the jury and judgment of the court must stand.    It is unnecessary, therefore, to discuss in detail the exceptions to the admission of evidence or the instructions.    On conflicting evidence the verdict of the jury settles the conflicts in favor of the successful party so that the real question at issue is should the court have entered judgment for the plaintiff or defendant upon the evidence.

In recent years many cases of the last clear chance have been before the Supreme Court in damage cases against railroads and street railways, so that the principles upon which it is based may be said to be well settled, but before applying those principles to the facts of this particular case it would tend to clearness to state again the general principle of the doctrine, and the rule as to burden of proof.

[3, 4] "The foundation of the doctrine is that the parties are guilty of concurring negligence, and there must be some condition, circumstance, or superadded fact which one of the parties saw, or by the exercise of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party, and the obligation of discovering the last clear chance

is mutual." *Green* v. *Ruffin,* 141 Va. 628, 125 S. E.
747; *McNamara* v. *Rainey Luggage Corp., et al.,* 139
Va. 197, 123 S. E. 515.

"One relying on the doctrine of the last clear chance
has the burden of proving affirmatively by a preponder-
ance of evidence that by the use of ordinary care, after
his peril was discovered, there was in fact a last clear
chance to save him." *Washington & Old Dominion
Railway* v. *Thompson,* 136 Va. 597, 118 S. E. 79; *Hendry*
v. *Virginia Railway and Power Company,* 130 Va. 283,
107 S. E. 716; *Ashby* v. *Virginia Railway and Power
Company,* 138 Va. 310, 122 S. E. 104.

[5, 6] The established facts in the case are that the
defendant operates a double track street railway on
Granby street in the city of Norfolk, that runs approx-
imately north and south. The accident occurred on
that street between Freemason street and College Place
where the street is thirty-five feet wide, exclusive of side-
walks, and the distance from the west rail of the south
bound track to the curb or sidewalk line is ten feet ont
inch. The street car involved in the accident had
crossed Freemason street, was moving south, and the
plaintiff's truck (a Ford five feet wide) was parked on the
west side of the street against the curb line, headed south,
while the plaintiff delivered some eggs to a nearby restau-
rant. When the plaintiff delivered the eggs and returned
to the truck, he and his partner, Carnohan, looked back
and saw the street car from forty to sixty feet behind
them moving south at the rate of about ten or twelve
miles an hour. They moved out from the curb, bearing
to the left in order to pass Gregory's automobile parked
some thirty or forty feet further south. In order to
pass the Gregory automobile, it was necessary that the
left wheels of the plaintiff's truck should straddle the
right hand rail of the south bound track. The truck.

straightened out going south when it reached a point near Gregory's automobile, according to the plaintiff and his partner, it slowed down on account of an automobile coming out into the street further south and immediately the collision occurred.    Carnohan *said the collision would not have occurred if he had not slowed down.*

The front of the street car struck the truck in the rear, when the latter was nearly opposite Gregory's automobile, knocked the Leland truck off the track into the Gregory automobile, which was knocked upon the sidewalk; the truck scraped along the side of the street car, and there was another impact; finally the truck became entangled in the rear step and door of the street car, the front of the truck was forced into an iron light pole in the curbing with such violence as to cause the damage to Leland and the truck, when the street car stopped with the front of the truck against the light pole, and the rear having broken the rear step off the street car, being in the back part of the street car. From the point of the first impact to the point where the car stopped was about a street car length.

The street car had the right of way superior to the truck and the motorman had the right to presume that the driver of the truck would protect himself, and until it appears that he cannot or will not exercise his powers to protect himself the motorman is free from negligence. The occupants of the truck, with full knowledge that the street car was coming behind them; that they could have speeded up and gotten off of the street car track either to the left or right if the front was obstructed, did not look back or give any sign that they were not going to give the right of way to the street car.    There must be evidence of some kind to show that the plaintiff cannot or will not exercise care for his own safety, and there must be sufficient time and opportunity, after

the discovery or duty to discover, the plaintiff's danger from his own negligence, for the motorman to save him. The plaintiff produced no evidence to prove that the motorman knew, or by the exercise of ordinary care should have known, that the driver of the truck could not or would not exercise care for the safety of the truck, nor do the circumstances connected with the accident prove that the motorman failed to exercise reasonable care to stop the street car after the plaintiff's danger became apparent. Sippel, a passenger who was standing in the aisle of the street car behind the motorman and saw the whole occurrence, corroborates the motorman's statement that the truck, without any warning, drove upon the track in front of the street car, and that the motorman immediately put on brakes, and reversed the current, thus doing everything in his power to avoid any damage, and that the street car could not be stopped sooner.

The motorman testified that a street car of the type of the one involved in this collision, running at the rate of ten miles an hour, could not be stopped in an emergency in less than a car length and a half or two car lengths. There being no evidence to the contrary this must be taken as an established fact. There is no evidence of any negligence on the part of the street car company prior and up to the time of the collision, and before the first impact the motorman put on his emergency brakes, and then the fact that the street car, from its momentum, pushed the truck into the light pole, thus causing the plaintiff's injury, cannot be claimed to be a negligent failure to exercise reasonable care to protect the plaintiff from his own negligence. The plaintiff's evidence establishes that his injuries were the result of the carelessness of his partner and himself in driving upon the street car track and not paying any

attention to their safety, or the street car that they knew was approaching them from the rear.

[7] The plaintiff, Carnohan, and T. J. Morley, as partners, brought suit for damages to their truck against the defendant street car company based upon the same evidence and cause of action as this action. The action by the partners was tried first and resulted in a verdict by the jury in favor of the plaintiffs, but upon motion of the defendant, the verdict was set aside, and final judgment entered for the defendant by virtue of section 6251, Virginia Code, 1919, thus the court conclusively determined that the negligence of the two plaintiffs, Leland and Carnohan, were the proximate cause of the collision and resulting injury.

Thereupon the defendant filed two special pleas, one of *res judicata* and the other of estoppel by judgment, setting up this judgment. Both of the pleas were stricken out on motion of the plaintiff, to which the defendant excepted. Then, upon the trial, the defendant offered evidence to show the estoppel by judgment, but upon objection of the plaintiff the evidence was excluded and the defendant excepted.

The pleas and offered evidence invoke the principle of universal jurisprudence forming part of the legal system of civilized nations, as an obvious rule of expediency and justice, that the judgment of a court of concurrent jurisdiction, directly upon the point, is a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court. Briefly stated, the doctrine of *res judicata* is that an existing final judgment, or decree rendered upon the merits, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all their actions or suits in the same or any other judicial

tribunal of concurrent jurisdiction on the points and matters in the first suit.

[8, 9] The plea of *res judicata*, the plea of estoppel by judgment, and evidence to show the estoppel by judgment are based upon similar principles of law, the conclusiveness of the judgments of the courts, and the effect of a judgment as estoppel, but they are different forms of procedure, and the one that is appropriate to a particular case must be determined by the rules of pleading. No objection, however, as to the propriety of the method by which the defendant sought to present this judgment as an estoppel to any recovery in the instant suit was made by the plaintiff and the court must have been of opinion that its judgment in the partnership suit did not bar the plaintiff's recovery for his personal injuries. This position is erroneous. The judgment of the court determined that the joint negligence of the plaintiff and Carnohan was the proximate cause of the collision or was conclusive of any right of recovery of either or both of them in any other action based upon the same cause of action.

[10] The plaintiff in his brief claims the pleas were filed too late and neither of them averred that the facts stated occurred since the last continuance. Pleas of matter *puis darrein* continuance at common law were construed very strictly, because at common law a defendant could only plead one plea, and if anything happened between the continuances which would be a better answer to the declaration than the plea already pleaded, he was allowed to plead it by way of substitution for the plea pleaded, provided he alleged that it occurred since the last continuance. He could not plead the plea as a matter of right. If offered at a later term than the first after the matter arose it was in the *discretion* of the trial court whether or not it should be received. But this was a judicial discretion.

[11] In Virginia a defendant may plead as many several matters, whether of law or fact, as he may see fit, and if the matter arose since the last continuance, the plea setting it up is not substitutional and does not waive all other defenses. The statute allowing the defendant to file as many pleas as he desires, together with the liberal practice of amendments to the end that a case may be tried according to the very right, gave the defendant the right to file its plea of *res judicata.* The court should have received one or the other of defendant's pleas and passed upon the legal proposition thereby presented. But the plaintiff and his partner engaged in their joint enterprise were guilty of negligence in driving their truck upon the street car track, as they did, and having failed to prove that the defendant had a last clear chance to avoid the damage, the verdict of the jury will be set aside and judgment will be entered here for the defendant.

*Reversed.*