# Staunton

## Z. B. Capps v. F. E. Whitson.

September 17, 1931.

Present, Campbell, Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Page, Page & Page*, for the plaintiff in error.

*John M. Arnold*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The parties will be referred to as they were related in the trial court, F. E. Whitson was plaintiff and Z. B. Capps was defendant.

The plaintiff sued the defendant, by notice of motion, for damages in the sum of $2,000.00 alleged to be due on account of the defendant's negligence in an automobile accident in the city of Norfolk on the 9th of January, 1925.

The automobile bus of the plaintiff was being driven by Claude Wilson, her employee, traveling west on twenty-eighth street, and the automobile of the defendant, driven by himself, was proceeding south on Hampton boulevard. The two streets intersect at about right angles. Hampton boulevard is a street with a parkway in its center, the width of the entire street, parkway and eastern and western driveways is about sixty feet. The traffic on the boulevard bound south uses its western driveway along which the defendant was going at the time of the accident, which was approximately 5 P. M. It was raining and snowing and the streets were wet and slippery. The bus stopped near the eastern driveway of the boulevard for the purpose of discharging passengers, it then proceeded across the boulevard at a speed of about ten miles an hour and as it approached the western margin of the western driveway

its rear was struck by the oncoming automobile of the defendant, the impact overturning the bus and materially damaging it. The defendant was driving from thirty to thirty-five miles an hour.

The case was tried in the Circuit Court of the city of Norfolk on the 31st day of May, 1927, but the jury failed to agree upon a verdict. On the 8th of July, 1929, it was again tried, the jury rendering a verdict for the plaintiff for $675.00. The court declined to set aside the verdict on the ground that it was contrary to the law and the evidence.

Four assignments of error are submitted, the first involves the above motion, the second and third have to do with the action of the court in rejecting the defendant's plea of *res adjudicata* or estoppel and the fourth relates to the action of the court in granting certain instructions over the objection and exceptions of the defendant.

The plea of *res adjudicata* or estoppel grew out of the former case of *Davidson* v. *Capps & Whitson*, which was tried in the Court of Law and Chancery of the city of Norfolk in June, 1925. The plaintiff, in that suit, Lula O. Davidson, who was a passenger at the time of the accident in the Whitson bus, claimed damages for personal injury in the sum of $10,000.00, on account of the alleged negligence of both of the defendants, Capps and Whitson. The jury returned a verdict against both of the defendants for the sum of $2,500.00, which was paid by them ratably or jointly.

The contention of the defendant here is that the plaintiff having been adjudged guilty of negligence in a former trial growing out of the same collision and based upon the same merits is estopped from recovering against the defendant in the immediate case.

The record in the former case was offered as evidence with the plea and both were rejected by the court. In our opinion the action of the trial court was plainly right.

In the former case the defendants were charged with negligence against the plaintiff, as joint *tort-feasors*. It is perfectly patent that, while they were sued jointly, they owed the plaintiff different degrees of care. The bus owner owed her the high degree of care due by a carrier to its passenger arising from the contractual relation. The duty of the automobile owner, Capps, with respect to speed, warnings of approach and its management, was so to operate his car, along the streets and crossings, which he has an equal right with the other members of the public to use, as to anticipate and avoid collisions with other cars whereby persons and property might be injured.

The issues of negligence in the case in judgment as between the bus and automobile owner might be entirely different from those in the former case where the plaintiff was alleging negligence against them both as to herself. For instance the question of the last clear chance might be a very pertinent issue in the case between the two joint *tort-feasors*, whereas it might be of no concern to the plaintiff in the former case. So with the issue of contributory and concurring negligence. There both parties are negligent. Both might properly have to respond jointly in damages for injuries inflicted upon a third person, but neither could recover from the other.

The point is that the issues in both suits must have been identical. In the case of *Ches. & Ohio R. Co.* v. *Rison*, 99 Va. 18, 37 S. E. 320, the distinction is made between the plea of estoppel and that of *res adjudicata;* it is said in the syllabus: "A plea of *res adjudicata* is good only when the causes of action are the same. It is otherwise with a plea of estoppel by a former verdict." On page 34 of 99 Va., 37 S. E. 320, 325, it is further said: "It is essential to an estoppel by record that the identical question upon which it is invoked was in issue in the former proceedings.

"The rule is thus stated in Black on Judgments, section 610: 'There must be an identity of issues, and by

this is meant that the issue raised in the second suit, upon which the evidential force of the former judgment is to be directed, must be identical with the issue, or one of the issues, raised and determined in the first ·action.' "

"Matter in Second Suit in Issue in First.—To render a former judgment or decree a bar as *res judicata*, or estoppel, in the second suit, about the same matter, not mere matter of defense, the matter of the second suit must have been actually in issue in the first. *Tayloe* v. *Rose*, 10 Va. Law Reg. 1002." Digest of Va. and W. Va. Reports, Michie, volume 4, section 58, page 942.

The causes of action in the two suits are not the same and the issues are not identical.

The defendant cited the case of *Virginia Ry. & Power Co.* v. *Leland*, 143 Va. 920, 129 S. E. 700, to sustain his contention as to the applicability of his pleas.

That case is not the case in judgment at all. In the two cases there the plaintiff in the one was also of the plaintiffs in the other, the defendant in both cases being the same. In the first case a partnership, of which one Leland was a member, sued the defendant company for injuries to their truck; in the second case Leland, personally, sued the defendant company for injuries to himself. It was properly held by this court that the question of negligence of the defendant company was the same in both cases. In the case in judgment the plaintiff in the first suit was a stranger to the second suit.

We think there was no error in the action of the trial court in rejecting the said plea or blended pleas.

We come now to a discussion of the action of the court in refusing to set the verdict of the jury aside because the same was contrary to the law and the evidence and its failure to enter judgment for the defendant because the verdict was plainly wrong and without evidence to support it.

We note here that the defendant in the case under con-

sideration also plead contributory or concurring negligence on the part of the plaintiff.

It was in evidence that the parkway of Hampton boulevard was about twenty-two feet wide and each of the driveways about sixteen feet wide. Claude Wilson, the driver of the bus, was presented as a witness for the plaintiff and he testified that as he was entering Hampton boulevard he looked and Mr. Capps, the defendant, was 150 feet away and a passenger made the remark, "there is a man on the right," or, "watch the fellow on the right," and he replied: "I see him." The streets were wet and slippery. When the bus reached the west margin of the parkway just before entering the south bound driveway, on which the defendant was traveling, the defendant was about fifty feet away and the witness referred to said that he noticed that the defendant was not slowing up and looked like he had not seen the witness or bus at all. In exact language the witness further testified as follows:

"Q. Was there anything in the world, after this man told you a man was coming down the street driving like he was crazy, to keep you from stopping your car?

"A. If he had been driving a reckless rate of speed there would not.

"Q. What do you call reckless?

"A. Forty or forty-five.

"Q. Was there anything to keep you from stopping your car and letting him go past?

"A. Nothing to keep me from stopping.

"Q. You had been watching this man that was coming and could have stopped your car if you had wanted to—you could have stopped and let him go by?

"A. I could have.

"Q. You would not have lost a minute of your time, the time of your bus owner?

"A. I guess not.

"Q. You felt that he would stop, is that not correct?

"A. I guess I felt that way; I figured that I had the right of way at the same time.

"Q. There is no question about the fact you testified before in that case, it is true, you had plenty of opportunity to stop the car if he didn't see you?

"A. Yes."

And again the witness further testified:

"Q. You say he never gave any indication that he would slow up?

"A. When I got enough room to look out of the door.

"Q. Was there anything to keep you from looking out the door at the man coming?

"A. I could not see him.

"Q. Why couldn't you see him?

"A. Not out the door, through the windshield.

"Q. You say you couldn't see him?

"A. I testified that I could see him, but if I looked out of the door I would look this way, up to the sidewalk.

"Q. Which place did you look out when you first saw him?

"A. Out of the windshield.

The witness also testified:

"Q. You thought because you had the right of way you took it, is not that the answer to the whole thing?

"A. I thought I could clear the street at the rate he was coming before he got there without him slowing up, which he didn't slow up.

"I had slowed down real slow to cross over as I entered here, and when I got across here to the second driveway and looked around he was probably fifty feet; I noticed he was not slowing up or looked like he had seen me at all when I crossed over here."

Thus we have an account of the affair by the plaintiff's own agent and we think there is ample justification for the assertion that out of his mouth she is convicted of contributory or concurring negligence.

The bus was nearly sufficient in length, if placed straight, to occupy the entire width of the driveway. To proceed slowly with this character of vehicle when the driver saw the defendant approaching at a high rate of speed, without apparently seeing the bus or giving any evidence of an intention to slow up, the matter being of sufficient moment or emergency to cause a passenger to warn him of the situation, is surely negligence.

We think that the defendant was also negligent in approaching the intersection of the two streets at the rate of speed he was going, the streets being in an unsafe condition and his windshield being clouded by the state of the weather, but it is manifest to us that the concurring negligence of both parties produced the result.

Where this is so there can be no recovery by either party if there is no question of the last clear chance involved. This is so well established by the numerous decisions of this court that it is needless to cite authorities.

It follows that in our judgment the trial court erred in refusing to set the verdict aside as contrary to the law and the evidence and entering judgment for the defendant.

We do this now.

*Reversed.*