**JACKSON et al. v. BLUE et al.**

No. 5403.

Circuit Court of Appeals, Fourth Circuit.

Nov. 5, 1945.

Aubrey R. Bowles, Jr., of Richmond, Va., and W. Moncure Gravatt, of Blackstone, Va. (Bowles, Anderson & Boyd, of Richmond, Va., on the brief), for appellants.

George E. Allen, of Richmond, Va., Robert Whitehead, of Lovingston, Va., and M. Wallace Moncure, Jr., of Richmond, Va., for appellees.

Before SOPER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

This suit was brought in the District Court by Victor Blue, a citizen of Virginia, for injuries received on November 8, 1943 while driving a bus of the Atlantic Greyhound Corporation, which came into collision on a public highway of the State with the blade of a bulldozer that was being transported on a tractor-trailer truck. There were numerous defendants, all of whom were citizens of other States, but we are concerned on this appeal with only three defendants or groups of defendants against whom a verdict was rendered in the District Court. They are Robert Jackson, the driver of the tractor-trailer truck; Highway Equipment and Construction Company, the owner of the tractor-trailer and the bulldozer; and a partnership or joint venture which participated in the transportation of the tractor-trailer and bulldozer, known as Grannis, Higgins, Thompson & McDevitt Company, composed of certain individuals and a corporation, which have been called the "Pool" in this litigation.

### The Collision

We consider first the questions of negligence and contributory negligence upon which the liability for the accident depends. These questions were raised below by motions for a directed verdict on behalf of the defendants based on the grounds, amongst others, that there was no evidence of primary negligence on the part of the defendants or any of them, and that in any event Blue, the driver of the bus, was guilty of contributory negligence. The evidence on the part of the plaintiff may be summarized as follows: The collision occurred on a dark, rainy evening between 6:30 and 6:45 P. M. on November 8, 1943 on Route 40 about six miles south of Blackstone, Virginia, in the vicinity of a small culvert. The Atlantic Greyhound bus was bound north and the tractor-trailer was bound south. The roadway was hard surfaced macadam varying from 18½ to 20 feet in width. The width between the headwalls of the culvert, which were 6 inches in height, was 22 feet. The bus was 33 feet long and 8 feet wide and weighed 9 tons.

It contained fifteen passengers at the time in addition to the driver. The tractor-trailer combination was designed for the movement of heavy machinery. The tractor, 15 feet in length, and joined to the trailer 28¼ feet in length by a gooseneck, and the entire length of the articulated vehicle was 43½ feet. The bed of the trailer was 18 to 20 inches above the surface of the highway. The width of the trailer was 8 feet. The machine transported by the tractor-trailer consisted of a caterpillar tractor equipped with a bulldozer weighing 18½ tons, the entire vehicle, including the tractor-trailer and the bulldozer weighing 62,000 pounds or 31 tons. The blade of the bulldozer was 12 feet 3 inches wide and extended 25 inches over the left side of the trailer as it proceeded along the highway. The entire width of the tractor-trailer unit with the bulldozer superimposed was 147 inches.

Immediately before the accident the bus was proceeding northwardly at the rate of thirty miles per hour down a long grade which was straight for 1,000 feet but which ended at the culvert. North of the culvert the highway rose slightly for 300 feet. The center of the highway was marked with an intermittent white line which was clearly marked and continuous so as to show the center of the roadway south of and inside the culvert. The tractor-trailer had been traveling, according to the testimony of its driver, at the rate of fifteen miles per hour but came to a standstill shortly after the collision.

It will be observed that the width of the defendants' vehicle plus the extension of the bulldozer on each side amounted to 12¼ feet, so that if the wheels of the vehicle remained on the paved roadway, the edge of the bulldozer, centered on the trailer, reached to or across the center of the roadway 18½ to 20 feet wide. The evidence indicates that this extension of the bulldozer on the left produced the catastrophe, for the plaintiff, the driver of the bus, testified that the bus was proceeding at the rate of thirty miles an hour on its right hand side of the road when the accident occurred. The bus passed the tractor successfully and without contact with the tractor, but the front part of the bus on its left side came in contact with the protruding end of the bulldozer. It is conceded that the first injury to the bus occurred when the front part of it struck the blade of the bulldozer. After the accident marks were found on the left side of the trailer, indicating that after the blade of the bulldozer penetrated the bus, the bus scraped along the left side of the trailer.

The blade of the bulldozer cut a gash in the left side of the bus 21 inches in depth, 5 feet 4 inches above the ground, throughout the length of the bus, injuring the plaintiff and also killing or injuring a number of persons riding on that side of the vehicle. The driver of the bus lost control of the vehicle and it finally stopped 150 feet north of the culvert at an angle on the west side of the road entirely off the pavement. The tractor-trailer stopped about 40 feet south of the culvert on the west side of the road with its left side wheels partly over the center of the road. It was seen in this position by the driver of the second section of the Greyhound bus which arrived at the scene a few minutes after the collision. He drove off the east side of the road and stopped south of the culvert along side of the tractor-trailer in order to avoid the bulldozer, which had been displaced by the blow and extended over the center of the highway.

### The Defendants' Negligence

The charge of negligence in the operation of the tractor-trailer is based upon its movement along the highway burdened by a machine of greater width than one-half the surface of the road which the combination was privileged to occupy. The paved surface in the vicinity of the culvert was widest within the walls of that structure, that is to say, 22 feet in width, while the bulldozer was 12 feet 3 inches wide and protruded 25 inches beyond the 8 foot trailer on the side next to the opposing traffic. When it is borne in mind that the journey was continued after dark, the danger to passing vehicles is obvious. Moreover, the arrangement of the defendants' combination was contrary to the law of Virginia. It is provided by § 2154 (158) of Michie's Code of Virginia that no vehicle shall carry any load extending beyond the line of the fender or body on the left side of the vehicle, nor more than 6 inches beyond the line of the fender or body on the right side thereof. The width of the integrated vehicle and load exceeded that permitted by State statute, Michie's Code, § 2154 (160), which provides that the gross weight of any six-

wheel vehicle or any combination of vehicles and load shall not exceed 35,000 pounds. Moreover, the total outside width of the defendants' unit, including the load, was 147 inches, whereas the Virginia statute, Michie's Code, § 2154 (158), provides that no vehicle shall exceed a total outside width, including the load thereon, of 96 inches.

The State laws do not overlook the need to provide for unusual situations since it is provided in Michie's Code, § 2154 (161) that the State Highway Commission and local authorities of cities and towns may, in their discretion, issue a special permit in writing authorizing the applicant to operate or move a vehicle upon the highways of a size or weight exceeding the maximum specified in the Virginia statutes above mentioned. The defendants made no application for and received no such permit.

It is generally considered that a prima facie case of negligence is made out where a statute prescribing a duty for the protection of persons or property is violated; and in this case it is conceded that the defendants' violations of the Virginia statutes constituted technical negligence. But it is urged that such a showing is insufficient unless it appears that the negligence was the proximate cause of the injury claimed. It is obvious in the pending case that such a showing was abundantly established. The conduct of the defendants exhibited a lack of care in an extraordinary degree, irrespective of the statutory prohibitions, and the violations of the law in addition gave point and support to the charge of negligence and the causal connection between it and the plaintiff's injury. See Etheridge v. Norfolk Southern R. Co., 143 Va. 789, 129 S.E. 680; Kinsey v. Brugh, 157 Va. 407, 411, 161 S.E. 41; Wyatt v. Chesapeake & Potomac Telephone Co., 158 Va. 470, 480, 481, 163 S.E. 370, 82 A.L.R. 386.

### Contributory Negligence

Notwithstanding these conclusions, we are asked to rule as a matter of law that the plaintiff is barred from recovery by contributory negligence on his part. It is said that he was driving negligently on a wet, slippery surface after dark in excess of the lawful speed of 35 miles per hour on the wrong side of the road without keeping a proper lookout for passing vehicles; and it is suggested that if he had been driving carefully, he could have avoided the tractor-trailer by driving off the road before reaching the culvert as did the driver of the second section of the Greyhound line on the night of the accident.

If these allegations were proved beyond question, the defense would be made out; but they represent in large part the conclusions of the defendants on disputed questions of fact. The charge of excessive speed is based upon the fact that the heavy bulldozer was dislodged from its original position on the trailer when it was struck by the much lighter bus, and by the fact that the bus traveled a substantial distance after the collision before it was stopped. The charge that the bus was on the wrong side of the road is based upon the testimony of the men in charge of the tractor-trailer. The charge that the plaintiff failed to keep a proper lookout rests on his testimony that he saw only the headlights of the approaching tractor-trailer whereas other witnesses testified that the tractor-trailer carried thirteen other lights variously placed on the vehicles in the combination, as well as a red marker light welded to the left bottom edge of the bulldozer blade.

All of these matters were submitted to the jury when the judge charged the jury on the question of contributory negligence, and we think that the defendants were entitled to nothing more. The plaintiff testified that he was driving at thirty miles an hour on his side of the road. What effect a blow from the bus going at thirty miles an hour would have upon the position of the bulldozer, placed on the tractor-trailer going at fifteen miles an hour or less, is a matter of speculation or judgment only, and gives rise to no certain conclusion as to the speed of the bus. The testimony was conflicting as to whether all the lights of the tractor-trailer were burning at the time of the collision, and particularly whether there was a red light on the lower edge of the bulldozer blade. In any event, it is by no means certain that the driver of an approaching vehicle who saw the numerous lights said to have been burning on the tractor-trailer would realize that the red light at the side was attached to a dangerous projection extending over the middle of the road and be led thereby to stop or pull off to the side

of the road to avoid a collision. The question of contributory negligence was for the jury.

### Liability of Highway Equipment

■ The responsibility of two of the defendants for the operation of the tractor-trailer is not questioned. Robert Jackson was the driver of the tractor-trailer and it is not denied that he was acting at the time for the Pool in the transportation of the bulldozer. It is contended, however, that Highway Equipment had no control over the driver and no responsibility for his conduct at the time of the accident. The relations between the driver, the Pool and Highway Equipment are somewhat complicated and confusing, and the judge left it to the jury to decide whether to some extent the driver was also operating the tractor-trailer for Highway Equipment and was subject to its control in the means and method of accomplishing the journey. Highway Equipment contends that there was no evidence to support the submission of this question, but we are of opinion that the ruling was without fault as the following summary of the testimony on the point will disclose.

The Pool was under contract to build Camp Pickett in Virginia for the United States Government. For this purpose it needed a tractor-trailer and a bulldozer, and secured the use of them under oral leases from the owners. It leased the tractor-trailer from Highway Equipment, its owner, with the understanding that the Pool was to pay the driver, but that Highway Equipment was to have the use of the tractor-trailer when it was not being used by the Pool.

The Pool also acquired the bulldozer by oral lease from its owner which was the corporate member of the Pool. At that time the machine was at West Point, Virginia, whence it was moved by the Pool one hundred and sixty-five miles to Camp Pickett, with the understanding that when it was no longer required, it would be returned to West Point or sent an equal distance by the Pool to some other point designated by the owner. After the Pool finished its work and terminated its leases on the tractor-trailer and the bulldozer, Highway Equipment agreed to buy the bulldozer subject to the obligation of the Pool to return it to West Point or move it an equivalent distance, and Highway Equipment leased the bulldozer to the Brown Paving Company for use at Georgetown, South Carolina.

Affairs were in this posture when the transportation of the bulldozer from Camp Pickett to Georgetown was undertaken. It was put in motion by W. F. Brown, who was president of the Brown Paving Company and vice president and director of Highway Equipment. It so happened that Robert Jackson, the defendant, was making use of the tractor-trailer in North and South Carolina to move certain machinery for Highway Equipment. Brown met and instructed him to go to Camp Pickett and bring the bulldozer to Georgetown. Brown also requested F. N. Thompson, President of Highway Equipment, to deliver the bulldozer to him at Georgetown. Accordingly, Jackson reported to Camp Pickett and the bulldozer was loaded on the tractor-trailer by employees of the Pool. The accident occurred only about six miles from the starting point at Camp Pickett. The distance from Camp Pickett to Georgetown was in excess of one hundred and sixty-five miles, the distance to which the Pool's obligation was limited, but the arrangement was that Jackson was to take the bulldozer the entire distance from Camp Pickett to Georgetown.

It is obvious that at the time of the accident the transportation of the bulldozer was being carried on both for the benefit of the Pool in the performance of its obligation and for the benefit of Highway Equipment in the delivery of the machinery to the new lessee at Georgetown. Moreover, the evidence tended to show that the relationship between Highway Equipment, the Pool, and the members thereof was so intimate and involved that Highway Equipment, as well as the Pool, exercised a measure of control over the transportation of the machine. It was shown that Brown was president of the Brown Paving Company and vice president of Highway Equipment. The stock of Highway Equipment was owned by the Brown Paving Company; F. N. Thompson was president of Highway Equipment, vice president of Brown Paving Company and vice president of the Pool. The situation was described by an officer of one of the corporations involved when he said that every individual, connected with the activities described herein, represented from two to five companies, and that it was well nigh impossible to know in what capacity instructions for the

transportation of the bulldozer had been given.

██ It is contended, however, on behalf of Highway Equipment that it had no responsibility for the transportation of the equipment at the time of the accident because it occurred within the distance covered by the obligation of the Pool to return the bulldozer; but this argument is not tenable because it was understood from the beginning that the machinery was to be carried all the way to Georgetown in one continuous journey. Under these circumstances there was no error in the instruction to the jury that Highway Equipment should be held liable if they should find that to some extent it was in control of the driver of the tractor-trailer, and the evidence justified the finding that the journey from Camp Pickett to Georgetown was the joint enterprise of Highway Equipment and the Pool, and that the driver was acting for both of them in taking the bulldozer to the place where it was needed.

## Highway Equipment's Motion For Summary Judgment

Highway Equipment makes the additional contention that the District Judge erred in refusing to grant a motion for summary judgment in its favor under Rule 56 of the Rules of Civil Procedure, 28 U.S. C.A. following section 723c, which was filed in advance of the trial below. The motion was based on a judgment previously rendered in the Circuit Court of Lunenburg County, Virginia in a case wherein the administrator of J. J. Shelton, Jr., a passenger on the bus who was killed in the collision, brought suit for damages against the Atlantic Greyhound Corporation, the Pool, Highway Equipment, Robert Jackson and other defendants. In that case the jury found a verdict for the plaintiff against Robert Jackson, the driver of the tractor-trailer, and the Pool for $15,000 but found a verdict in favor of the Atlantic Greyhound Corporation and Highway Equipment. Subsequently on November 18, 1944, in response to motions of counsel, the judge set aside the verdict in favor of the Atlantic Greyhound Corporation and entered a judgment against it, but refused to take similar action in regard to Highway Equipment and entered a judgment in its favor. This action was taken under the authority conferred on the court by § 6251 of the Virginia Code. As to Highway Equipment the judge said that he felt bound by the verdict of the jury but would have found against it had he been sitting as a jury; but he further said that as the Atlantic Greyhound Corporation owed the highest practical degree of care to its passengers, the judgment should go against it because in his opinion the driver was guilty of at least a slight degree of negligence. Thereafter the Atlantic Greyhound Corporation, Jackson and the Pool applied for and were granted a writ of error and supersedeas by the Supreme Court of Appeals of Virginia to the judgments against them; but no appeal was taken from the judgment in favor of Highway Equipment, and that judgment had become final when the motion for summary judgment in the instant case on its behalf was refused by the District Judge.

Highway Equipment contends that the judgment in the case in the State court, exonerating it from liability, is binding as res adjudicata in the pending case, not only upon the Atlantic Greyhound Corporation, which was party to the previous suit, but also upon Victor Blue as the employee of the Greyhound Corporation and a person in privity therewith.

██ The pertinent decisions of the Supreme Court of Appeals of Virginia are against this contention for that court adheres to the rule that in order to invoke the doctrine of res adjudicata it must be shown that the issues in the case at bar are identical with those in the case already decided. That rule was applied in Capps v. Whitson, 157 Va. 46, 160 S.E. 71, in which it was held that a judgment in favor of the passenger of a bus against the owner of the bus and the driver of an automobile with which the bus was in collision was not binding upon the parties in a subsequent suit by the owner of the bus against the driver of the automobile. The court said (157 Va. at page 50, 160 S.E. at page 72):

"In the former case the defendants were charged with negligence against the plaintiff, as joint tort-feasors. It is perfectly patent that, while they were sued jointly, they owed the plaintiff different degrees of care. The bus owner owed her [the passenger] the high degree of care due by a carrier to its passenger arising from the contractual relation. The duty of the automobile owner, Capps, with respect to speed, warnings of approach, and its management, was so to operate his car, along the streets and crossings, which he has an equal right with the other members of the public to use, as to anticipate and avoid collisions

with other cars whereby persons and property might be injured.

"The issues of negligence in the case in judgment as between the bus and automobile owner might be entirely different from those in the former case where the plaintiff was alleging negligence against them both as to herself. For instance, the question of the last clear chance might be a very pertinent issue in the case between the two joint tort-feasors, whereas it might be of no concern to the plaintiff in the former case. So with the issue of contributory and concurring negligence. There both parties are negligent. Both might properly have to respond jointly in damages for injuries inflicted upon a third person, but neither could recover from the other.

"The point is that the issues in both suits must have been identical. * * *"

See also, Owen v. Dixon, 162 Va. 601, 175 S.E. 41; cf. Ward v. Charlton, 177 Va. 101, 12 S.E.2d 791; Johnston v. Kincheloe, 164 Va. 370, 180 S.E. 540; Virginia Ry. & Power Co. v. Leland, 143 Va. 920, 129 S.E. 700.

■ Finally, it was contended that erroneous rulings of law were made by the judge in the course of the trial which require reversal of the judgment as to all of the defendants. Error is claimed because the judge refused to allow the defendants to show that official permits for the movement of similar equipment over similar highways of the State had been previously issued to the Pool. There was no fault in this ruling. The fact that the State authorities on other occasions granted permits, in the exercise of their statutory discretion, did not justify the defendants in their violations of the statutes or relieve them from the legal consequences flowing therefrom.

■ Nor was it error in the charge of the court to call the three violations of the law above mentioned to the attention of the jury. They were told that these violations constituted negligence as a matter of law, an instruction conceded to be technically correct, and that if the three acts of negligence, or any one of them, was the sole proximate cause of the collision, their verdict should be in favor of the plaintiff; but that if they did not believe that either the excessive width of the load or the protruding bulldozer blade or the excessive weight of the vehicle was the proximate cause of the accident, their verdict should be for the defendants. This charge was not prejudicial to the defendants in referring to the excessive weight of the defendants' vehicle, as defendants especially contend. It was made plain that unless the excessive weight was the cause of the accident, the jury could not base a verdict upon it against the defendants.

■ Complaint is made because the judge instructed the jury that there is a presumption that the operator of a vehicle, other than the owner thereof, is operating it for the owner so as to render the owner responsible for the operation. It is said that this charge was erroneous because Highway Equipment filed an affidavit denying responsibility for the operation and the control of the vehicle under § 6126 of the Virginia Code which dispenses with proof of ownership of property alleged in any pleading unless an affidavit is filed putting it in issue. But there was no error in this connection for the judge further instructed the jury that Highway Equipment admitted the ownership of the tractor-trailer but denied responsibility for its operation at the time of the collision, and that in order for Highway Equipment to be held responsible for the operation of the vehicle, the driver Robert Jackson must have been to some extent at least subject to Highway Equipment's control. We see no error in this ruling, for the judge had previously charged the jury that the burden of proof was upon the plaintiff to establish its case by a preponderance of evidence, and that if as to any claim the jury was undecided whether the plaintiff had borne the burden of proof, the verdict thereon should be for the defendant.

■ Exception was also taken to the denial of defendants' motion for a mistrial based upon the publication of an article in a newspaper in Richmond, where the trial occurred, containing the statement that Jackson had been convicted of manslaughter and fined $500 in connection with the accident. The information was inadvertently given to a reporter on the newspaper by one of the attorneys for the defendants. They now assert, without proof, that the jury must have read the article and been prejudiced thereby against the defendants. When this matter was brought to the attention of the judge during the trial he instructed the jury to disregard newspaper accounts of the trial or circumstances in connection with the trial and told the jury that it was their duty to try the case exclusively upon the evidence given in the court

room and upon the law received from the court. In our opinion, the incident was properly handled by the judge to whose discretion it was committed. See, Bratcher v. United States, 4 Cir., 149 F.2d 742; United States v. Keegan, 2 Cir., 141 F.2d 248; United States v. Hirsch, 2 Cir., 74 F.2d 215. Cf. McKibben v. Philadelphia & R. Ry. Co., 3 Cir., 251 F. 577; Meyer v. Cadwalader, C.C. E.D. Pa., 49 F. 32; Morse v. Montana Ore-Purchasing Co., C.C. Mont., 105 F. 337.

The defendants also object to certain comments upon the evidence made by the judge in the course of his charge, but all of them were well within the scope of his authority and the jury were told that they were the sole judge as to the facts, and that the comments of the judge thereon were not intended to interfere with the jury's function. The charge as a whole was fair and impartial and without prejudice to any of the parties to the cause.

Affirmed.