VANCE TRUCKING COMPANY, Inc., and Allstate Insurance Company, Plaintiffs,

v.

CANAL INSURANCE COMPANY, Forrester Trucking Company, Inc., Herbert Francis Carson, Scott Carson, Susan Carson, David Carson, Christopher Carson, and Robert H. Carson, Administrator of the Estate of Annie Barbara Carson, Deceased, Defendants.

Civ. A. No. 4364.

United States District Court
D. South Carolina,
Greenville Division.

Jan. 6, 1966.

See also, D.C., 243 F.Supp. 469.

W. Francis Marion, and O. G. Calhoun, of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for plaintiffs.

Wesley M. Walker, and O. Doyle Martin, of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendants Canal Ins. Co. and Forrester Trucking Co., Inc.

David L. Freeman and C. T. Wyche, of Wyche, Burgess, Freeman & Parham, Greenville, S. C., for defendants Herbert Francis Carson, Scott Carson, Susan Carson, David Carson, Christopher Carson, and Robert H. Carson, Admr. of Estate of Annie Barbara Carson.

HEMPHILL, District Judge.

Declaratory Judgment action arising out of the collision in October, 1962, in Sumter County, South Carolina, when a large tractor-trailer unit crossed into the wrong side of the road and collided head-on with an approaching passenger vehicle causing the death of one of the passengers and serious injuries to other occupants of such vehicle. The tractor and the trailer were owned by Forrester Trucking Company, Inc., sometimes hereinafter referred to as Forrester, a South Carolina corporation, and the tractor was driven at the time by its employee Sammie Burgess. Both the tractor and the trailer were used on the day of the accident in the delivery of tobacco by Vance Trucking Lines, Inc., sometimes hereinafter referred to as Vance, the use of the tractor being pursuant to a written lease between Vance as lessee and Forrester as lessor.

The principal point for determination in this action is the agency of Sammie Burgess, the driver. Each of the trucking companies contends that he was the agent of the other at the time of the collision. Counsel for the plaintiff in the wrongful death action and the other parties sustaining injuries contend that Sammie Burgess was the agent, or servant, of both.

A determination of the question of agency in this action will not only resolve questions of coverage but will be *res judicata* as to the same question in the death action now pending against both trucking companies and in other suits that may follow by the other persons injured in the collision, all of whom are made parties to this action. For this reason, the death action has been continued until this action is decided. It appears to be conceded that the liability

for the wrongful death and personal injuries to third persons is clear. The question of damages, however, remains to be determined, and this should follow the determination in this action.

Depending upon the resolution of the question of agency, the interpretation of the respective contractual liabilities of Vance's insurer, Allstate Insurance Company, and Forrester's insurer, Canal Insurance Company, must be made.

Forrester has limits of liability of $100/300,000, and Vance has liability limits of $300/500,000.[1] There is a possibility that one or more of these claims may exceed one of these policy limits.

Vance and Forrester each disclaim legal liability for the actions of Sammie Burgess and seek to place the responsibility on the other. Each emphatically denies that it had control or dominion over Sammie Burgess. Taking the testimony and contentions of each at face value, the Court would have to conclude that Sammie Burgess was without any principal.

 The resolution of the factual determination must be made not merely from the written agreement between the parties, but also from the facts and circumstances surrounding their continuing relationship, as well as the facts and circumstances at the time of the traffic accident. Tate v. Claussen-Lawrence Construction Co., 168 S.C. 481, 167 S.E. 826. See also Hutson v. Herndon, 243 S.C. 257, 133 S.E.2d 753, 756.

Vance is a licensed carrier operating under Interstate Commerce Commission authority. Forrester is an intrastate carrier licensed under the authority of the South Carolina Public Service Commission.

During the tobacco hauling season, it appears that Vance would enter into agreements with Forrester pursuant to which Forrester would make available to Vance tractor-trailer units with drivers. A written agreement dated July 15, 1962 is in evidence under which Forrester undertook to lease to Vance "vehicles listed in this agreement." The agreement does not list or describe any equipment, but the parties are in accord that the tractor involved in the accident was one of the units subject to the lease agreement. The trailer appears to have occupied a somewhat different status as will be discussed below.

While the drivers furnished by Forrester were engaged in hauling tobacco, they would clearly be under the control of Vance and subject to the direction of Vance. At the end of a particular day's hauling, the driver of a Forrester truck could call Forrester for instructions or could return to the Vance terminal or could return to the Forrester terminal at Sumter. If a leased unit were returned to the Forrester terminal at Sumter, such unit and the driver could be used by Forrester in its own private business. The tractor involved in the collision was described as a "base unit" by a witness for Forrester who also said that Vance had priority as to this tractor since Forrester's hauling was slow during this period. On the other hand, it appears that any particular tractor-trailer unit and driver could be recalled by Forrester and another one substituted and, in fact, Sammie Burgess on October 3, 1962, the day preceding the accident, went on a trip with a load of cotton for Forrester.

Under the written lease, Vance and Forrester divided the gross revenues received by Vance for the hauling of tobacco on a 80/20 ratio, with Forrester receiving 80 per cent of the revenue and paying for gasoline and other expenses incident to the carrying of commodities.

It was frankly admitted and appears obvious that it was to the mutual interest of both Vance and Forrester to utilize the driver and tractor-trailer to a maximum as this would result in a maximum revenue to each of them. In other words, the lease arrangement between the parties was not one whereby the lessee was

1. See the excellent note by Wilkins, Federal Civil Procedure—Discovery of Existence and Amount of Defendant's Insurance Policy, 17 S.C.Law Rev. 750 (1965).

given exclusive custody of the leased property but rather was one whereby either the lessor or the lessee could use the property with both parties benefiting economically from the maximum use by the lessee.

It is also clear that the written lease did not cover the full arrangement between Vance and Forrester. There is no evidence that the trailer involved in the collision was subject to the lease. On the contrary, it appears to have been an extra trailer which Vance had been furnished by Forrester. Forrester likewise also furnished an extra tractor for use as a yard tractor and sent a man to Lake City just to load. The record is silent as to the agreement between Forrester and Vance respecting these matters. The officer who testified for Forrester knew of no agreement for compensation for either the tractor or the trailer. The inference is clear that both parties cooperated fully toward the end that Vance would be able to handle and transport a maximum amount of tobacco with the resulting joint benefit to each company. The joint or common relationship between the parties is further demonstrated by the manner in which payments were handled. Although Forrester was liable under the lease agreement for payment of gas, as the matter was handled in actuality, gas purchases were made by Forrester and charged to Vance and paid by Vance. These payments were deducted by Vance from Forrester's share of the revenue. Furthermore, Vance collected for its transportation only upon receipt from Forrester of a bill of lading bearing the receipt of the consignee. This was handled procedurally as follows:

When a Forrester truck and driver made a delivery for Vance to a Vance customer, this customer would sign a receipted bill of lading and deliver it to the Forrester employee. He, in turn, would deliver this receipted bill of lading to Forrester who, in turn, would mail it to Vance. This was Forrester's only method of keeping an account of the revenues derived by its units. On some occasions, this receipted bill of lading would be returned to Vance directly, but would not be delivered to Vance until another receipt showing substantially the same information as the bill of lading was delivered by Vance to the Forrester driver.

Drivers' logs kept in compliance with the requirements of the Interstate Commerce Commission were likewise delivered by the drivers first to Forrester who relied upon the same for information for its records and who then transmitted the logs to Vance in accordance with its lease agreement.

When a Forrester driver would return to the Vance terminal at Lake City, he could be requested by Vance to make another delivery. If there was no further load available, the driver would be on his own to return to Sumter or would be free for the rest of the day. On some occasions, the drivers would leave their tractor-trailer in Lake City and go without it to Sumter. The yard tractor was available for use and was used with the consent of Forrester for this purpose from time to time.

On the day of the fatal accident, Sammie Burgess had returned in the afternoon around 5 or 5:30 to the Vance terminal in Lake City, South Carolina. He had made a delivery of tobacco to Fairmont, North Carolina, and had in his possession the receipted bill of lading. This was toward the end of the tobacco season, and the dispatcher for Vance advised him that he did not have any further business for him. According to the dispatcher, Burgess was told that he could go in and that the dispatcher would get in touch with Mr. Forrester later. According to Sammie Burgess, the dispatcher said that he could go on into Sumter and that if he had another load, he would let Sammie's company know. At that time, Sammie Burgess was instructed by the Vance dispatcher to return to Forrester the extra trailer.

Sammie Burgess appears to have been paid by Forrester on a commission basis with extra compensation for nights when he "laid over" away from home.

The collision occurred around 7:20 P.M. while Sammie Burgess was on the way from Lake City to Sumter. At the time of the accident, he was carrying the receipted bill of lading and also the Interstate Commerce Commission logs. This was clearly for the benefit of both parties. He was returning the spare trailer to Forrester. As mentioned before, there was no indication that this trailer was leased under the written agreement. In any event, the furnishing of the trailer by Forrester to Vance was obviously designed to serve their mutual benefit. There was no evidence as to the agreement for re-delivery of the trailer. In absence of agreement specifying the place of re-delivery, it has been held that where the parties reside a reasonable distance from each other, the property should be returned to the residence of the person furnishing the same. Whether this rule is applied or not, there would be an obligation on the part of Vance to keep the trailer in a reasonably safe and suitable place. 8 Am.Jur.2d, Bailments, § 171. Thus, it was for the benefit of Vance that the trailer be returned at the earliest convenient time and this, of course, also benefited Forrester in its further use of the trailer. It was also to Forrester's benefit that Sammie Burgess return to Sumter.

In Jackson v. Blue, 152 F.2d 67 (4th Cir. 1945), a truck had been leased with its driver for the purpose of hauling a bulldozer. It appeared that the lessor had agreed to purchase the bulldozer which was being hauled after the work of the lessee had been completed. At the time of the accident, the bulldozer was being delivered to one to whom the lessor had leased it in pursuance to his contract to purchase the machine. The Court said:

> "It is obvious that at the time of the accident the transportation of the bulldozer was being carried on both for the benefit of the Pool [lessee] in the performance of its obligation and for the benefit of Highway Equipment [lessor] in the delivery of the machinery to the new lessee * * *. [T]here was no error in the instruction to the jury that Highway Equipment should be held liable if they should find that to some extent it was in control of the driver of the tractor-trailer, and the evidence justified the finding that the journey * * * was the joint enterprise of Highway Equipment and the Pool, and that the driver was acting for both of them in taking the bulldozer to the place where it was needed." 152 F.2d at 71–72.

The test of agency generally and in the State of South Carolina is said to be determined by deciding who has the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. Hutson v. Herndon, supra; Brownlee v. Charleston Motor Express Co., Inc., 189 S.C. 204, 200 S.E. 819, 824.

Who then had the right to control Sammie Burgess? Again, this question cannot be discussed in a vacuum apart from practicality. Obviously, any agent driving a motor vehicle as soon as he is out of sight of the employer is not, as a practical matter, subject to his direction and control. The real question it seems in this case is, "To whom would Sammie Burgess respond if a direction had been given to him after he had left the terminal?" For example, suppose that after he left the terminal, returning to Sumter, an employee of Vance had hastened after him with the request that he return to Lake City and make a late shipment. Under the lease arrangement between the parties and the relationship previously outlined, the conclusion is inescapable that Sammie Burgess would have acceded to this direction from Vance and returned to Lake City. On the other hand, suppose that an official of Forrester Trucking, having learned of Sammie Burgess's departure from Lake City, had hastened in his automobile to intercept him and had directed him to return to Lake City or any other point for the purpose of working for Forrester. Again, the conclusion is inescapable that Sammie Burgess would have acceded to this direction. Un-

der the arrangement between the parties, this is not an unnatural result, but rather, a natural one. As a matter of fact, each would have the right to direct Sammie Burgess at this particular time of the day and the only possible conflict that could arise would be in the event of Forrester and Vance issuing contrary instructions to Sammie Burgess at the same time.[2] As Judge Williams noted in Edwards v. Rogers, 120 F.Supp. 499, 503 (E.D.S.C. 1954): " * * * [T]he dividing line between the existence of liability and immunity * * * ordinarily lies in the right of the employer to control the acts of the agent at the time the tort is committed."

The testimony of Forrester's officer, however, was that there was no conflict in the instructions to the drivers of the leased equipment, and the Court is not called upon to imagine a hypothetical situation where such conflict might occur in the face of clear evidence that Sammie Burgess acted for the mutual benefit of Vance and Forrester. See Baur v. Calic, 166 Md. 387, 399, 171 A. 713, 719; Grasberger v. Liebert & Obert Corp., 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201; Keitz v. National Paving & Contracting Co., 214 Md. 479, 134 A.2d 296, 301, 136 A.2d 229; Maryland Casualty Co. v. Sause, 190 Md. 135, 57 A.2d 801, 804.

■ The principles respecting liability in this field are well summarized in Siidekum v. Animal Rescue League, 353 Pa. 408, 45 A.2d 59, 61, 62, as follows:

> By a continuous stream of authorities it has been declared that where one person lends his servant to another for a special employment the test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his general master or becomes subject to that of the party to whom he is lent or hired; the criteria is not whether the borrowing employer *in fact* exercises

control but whether he has the *right* to exercise it. It is also well recognized that under some circumstances both the lender and the borrower may have control over the servant so as to render each of them liable for his conduct, for he may have been transferred to carry on work which is of mutual interest to them and to effect their common purpose, so that his service to the one does not involve abandonment of his service to the other. It is further established that, when different inferences can reasonably be drawn from the testimony as to whether the lender or the borrower is the controlling master at the time of the accident, or whether both of them have a right of control, the question is one for the jury." [footnotes omitted.]

See also 56 C.J.S. Master and Servant § 2d(2).

■ The question here is for the Court to decide as there is no jury. In the case at hand, Sammie Burgess had not abandoned the service of Vance or his employer Forrester in making the trip from Lake City to Sumter. On the contrary, he continued to act for their mutual benefit and was subject to their joint control.

Great stress is laid by Forrester on the fact that a Vance decal was on the tractor at the time of the accident. This decal read as follows:

> "Operated by
> Vance Trucking Company
> Henderson, N. C.
> I.C.C. No. 93980
> N. C. No. 56"

Under 49 U.S.C., Section 304(e), the Interstate Commerce Commission is authorized to prescribe regulations governing the use of leased vehicles with exceptions being made by Subparagraph (f) denying the right to regulate the duration of any such lease or the amount of compensation to be paid for the use of the

---

**2.** Similar conflict was recognized long ago though on a different plane. Matt. 6:24. "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other."

leased vehicle. Regulations have been promulgated under the authority of this section which, among other things, require a lessee to remove any legend or device showing it as the operating carrier before relinquishing possession of leased equipment. These regulations also require the lessee to secure from the owner of the leased equipment, or someone authorized to act for the owner, a receipt specifically identifying the equipment and stating therein the date and the time of day possession of such leased equipment was taken by the owner from the authorized carrier. Ex Parte No. MC–43, Title 49, Federal Register, Section 207. At the time of the accident in this case, no such receipt had been secured by Vance.

Section 304 of the Act mentioned above authorizes such regulations as are reasonably necessary to assure that the lessee will have full direction and control of leased vehicles and will be fully responsible for the operation thereof while they are being so used. Under Section 207 of the regulations mentioned above, the lease must provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of the lease, and such duration is required to be made specific in the lease and to coincide with the time for the giving of receipts for the equipment as required in the regulations, both at the beginning and end of the lease arrangement.

The lease between Vance and Forrester has no provision respecting exclusive possession, control and use or for the assumption of responsibility. With respect to duration, the lease provides that it is to remain in force until cancelled or superseded by another lease and that its terms and conditions apply only whenever lessor's vehicle is actually in the service of the lessee.

 The failure to include the lease provisions required by the regulations in the particulars just mentioned would certainly not excuse Vance from any responsibility it might otherwise have for the actions of the driver of the tractor-trailer; and, on the other hand, the responsibility of Vance would not serve to release Forrester if, in fact at the time of the collision in question Forrester also held a joint right of control over Sammie Burgess.

 Vance contends that it is free from the duty to comply with the regulations because it was hauling "an exempt commodity." As mentioned before, the Interstate Commerce Commission may not regulate the duration of the lease of any vehicle or the amount of compensation to be paid for its use when it is engaged in hauling so-called exempt commodities referred to in 49 U.S.C. § 304 (f). Except for these two exceptions, however, all of the regulations governing the use of leased vehicles are applicable without regard to the commodity being hauled. The Interstate Commerce Act and the regulations issued thereunder obviously are not designed to excuse a party from liability which he might otherwise have. Thus, a determination that Vance is responsible under the Act and regulations does not preclude a finding that Forrester was also responsible. The fact that no receipt had been taken for the possession of the Vehicle at the time of the collision and the fact that the Vance decals were still upon the tractor are matters to be considered in an overall consideration of the relationship between the parties. A decision based on a consideration of all relevant factors that Sammie Burgess was the agent of both Vance and Forrester makes it unnecessary to consider whether Vance in any event would be responsible solely because of the Interstate Commerce Act and regulations.

The question of "proportionate pecuniary responsibility" was not argued so no decision is being made thereabout. However, the parties are not foreclosed from presenting this issue at a later time should they be so advised.

The Clerk will enter Judgment reflecting that both Vance and Forrester, and their insurers, must defend in the tort action which precipitated this controversy. Liability rest upon both.

And it is so ordered.