18132

Melrose HUTSON, Respondent, v. Cranel B. HERNDON, d/b/a
Herndon Motor Lines, Appellant

(133 S. E. (2d) 753)

*Messrs. Bryant & Fanning,* of Orangeburg, and *Brown, Jefferies & Mazursky,* of Barnwell, *for Appellant,*

*Messrs. Blatt & Failes,* of Barnwell, *for Respondent,*

December 5, 1963.

Moss, Justice.

Melrose Hutson, the respondent herein, instituted this action against Cranel B. Herndon, doing business as Herndon Motor Lines the appellant herein, to recover for property damage sustained by her when a tractor-trailer unit, owned by her, and leased to the appellant, being operated by her husband, B. H. Hutson, was involved in a collision with another tractor-trailer unit owned by her husband, and leased by him to appellant, and being driven by his employer, Mitchell Easler, which occurred on March 28, 1962, on U. S. Highway No. 1, south of Fredericksburg, Virginia.

It is undisputed that the respondent is a resident of South Carolina, and is licensed as a motor carrier by the South Carolina Public Service Commission, pursuant to Sections 58-1401 et seq., of the 1952 Code of Laws of South Carolina,

as amended, and as such operates under a Class E certificate in and through Barnwell County, South Carolina. It further appears that the respondent is not a licensed common carrier in interstate commerce.

The appellant is a common carrier of freight, holding a certificate from the Interstate Commerce Commission authorizing him to engage in the hauling of freight by motor vehicle in interstate commerce. He maintained offices at several places, including Homestead, Florida.

The record shows that on March 26, 1962, at Homestead, Florida, an agent of the appellant contacted B. H. Hutson and offered him the opportunity to transport two loads of green tomatoes to the City of New York. The tomatoes belonged to a customer of the appellant and he was under contract with such customer to transport the tomatoes to the City of New York. At the time the appellant engaged B. H. Huston to transport the green tomatoes to the City of New York, the said appellant did not have trucks available for such purpose.

After the two trucks were loaded with the green tomatoes, B. H. Hutson, as agent for the respondent, and Mitchell Easler, as agent for B. H. Hutson, executed trip-lease agreements with the appellant, leasing the respective tractor-trailer units, with driver. The appellant delivered a freight bill covering the shipment on each of the tractor-trailer units, addressed to a consignee in the City of New York. Each of said trip-lease agreements contained the provisions hereinafter quoted.

By the terms of the trip-lease agreement, executed by the appellant and the respondent on March 26, 1962, it was provided:

"4. This transfer of equipment under this lease shall take place at Homestead, Florida, an origin point served by the authorized carrier lessee.

"5. It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of

the authorized carrier lessee and that the lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the Interstate Commerce Commission.

"7. The authorized carrier lessee agrees to properly and correctly identify the leased equipment in accordance with I. C. C. requirements, * * *.

"8. The authorized carrier lessee agrees to remove any identifying device on the equipment before relinquishing the possession of the equipment.

"14. The lessor shall surrender full control, possession and management of said equipment to the lessee during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination and the lessee shall pay the driver for his services, and shall withhold any withholding or social security tax required by the United States Government."

The lease agreement contained a further stipulation as to the amount to be paid by the lessee to the lessor for the use of said equipment.

The parties agree that while the tractor-trailer unit belonging to the respondent was being operated over and along U. S. Highway No. 1, in the State of Virginia, by her husband, it crashed into the rear of the other tractor-trailer unit belonging to the said B. H. Hutson and being operated by the said Mitchell Easler. This collision, causing damage to the tractor-trailer unit of the respondent, gave rise to this cause of action.

The complaint alleges that the aforesaid collision and the resulting damages sustained by the respondent were caused by the negligence of the appellant through his agents, servants and employees. At the trial of this case, the appellant admitted the specifications of negligence alleged in the complaint but denied that B. H. Hutson and Mitchell Easler were his agents, servants and employees.

This action was tried, by agreement, before the Honorable Steve C. Griffith, Presiding Judge, without a jury. The trial.

Judge, by order dated March 15, 1963, found for the respondent, holding that the drivers of the tractor-trailer units, for the duration of the leases in question, were the servants of the appellant and that he was liable for their negligent acts.

The only issue raised below and in this Court is whether the drivers of the leased equipment were the servants of the appellant, with respect to the operation of the tractor-trailer units. Stated another way, the sole question for decision is whether the relationship of master and servant existed between the drivers of the tractor-trailer units, covered by the trip-lease agreements, and the appellant, at the time of and in respect to the collision.

At the trial of this case the appellant offered evidence tending to modify or change the terms of the written leases. However, the trial Judge held that the lease agreements were binding on the parties and could not be varied by parol evidence. He further held that the rights of the parties should be determined by a construction of the lease agreements. There is no appeal from this ruling, and such has become the law of the case. *Priester v. Brabham,* 230 S. C. 201, 95 S. E. (2d) 167. The relationship between the drivers of the tractor-trailer units and the appellant is determinable from the terms of the trip-lease agreements. The language of the trip-lease agreements is free from ambiguity. The construction thereof was a matter for the Court. *Rhame v. National Grange Mut. Ins. Co.,* 238 S. C. 539, 121 S. E. (2d) 94. *Bruce v. Blalock,* 241 S. C. 155, 127 S. E. (2d) 439.

In the case of *Brownlee v. Charleston Motor Express Co., Inc.,* 189 S. C. 204, 200 S. E. 819, it appears that the plaintiff had been injured by a truck operated by the defendant corporation, which said truck and the driver had been leased from one Cordray. While hauling the defendant's freight, the truck became involved in an accident in which the plaintiff was injured. The question of the truck driver's relationship with the defendant corporation was

raised and submitted to the jury. The jury, by its verdict, found that the driver was an employee of the defendant. Upon appeal, this Court said:

"* * * It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the person to whom he is loaned or hired. * * *"

The principle announced in the *Brownlee case* has been reaffirmed by this Court in the cases of *Brabham v. Southern Asphalt Haulers, Inc.,* 223 S. C. 421, 76 S. E. (2d) 301; *DeBerry v. Coker Freight Lines,* 234 S. C. 304, 108 S. E. (2d) 114, and *South Carolina Industrial Commission v. Progressive Life Ins. Co.,* 242 S. C. 547, 131 S. E. (2d) 694. This Court has held that in determining whether the relationship of master and servant exists it is not the actual control then exercised but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. *Bates v. LeGette,* 239 S. C. 25, 121 S. E. (2d) 289.

The foregoing rule is well summarized in 8 Am. Jur. (2d), Automobiles and Highway Traffic, sec. 631, at page 188, as follows:

"From the above it may be seen that the determination of liability for the acts of the driver of a leased motor vehicle depends on the question of who has the power to control and direct the driver. It should be emphasized that it is the right of control rather than the actual exercise of control that distinguishes the one having that right as employer. In particular cases, the question of who is liable for the acts of the driver furnished with a leased motor vehicle is usually one of fact for the jury. However, it is a question of law where the facts and circumstances are such

as to compel a holding that the relationship of employer and employee existed between the driver and the lessor or between the driver and lessee."

By the terms of the trip-lease agreement, the respondent surrendered, at Homestead, Florida, the full control, possession and management of said tractor-trailer to the appellant for the duration of said lease, which commenced at the delivery of the equipment to him and ended with delivery of cargo at destination. It was further agreed that the leased equipment was in the exclusive possession, control and use of the appellant and he assumed full responsibility in respect to the operation thereof to the public, the shippers and the Interstate Commerce Commission. The appellant agreed to properly and correctly identify the leased equipment as being operated by him and such identification was to be removed from the equipment before relinquishing the possession thereof to the respondent. The appellant agreed to pay the driver of said leased equipment for his services and to withhold from his pay any required withholding or social security tax.

The undisputed evidence shows that upon the execution of the trip-lease agreement, the driver of said tractor-trailer was given a freight bill by appellant's agent, directing the driver when, where and to whom the produce he was transporting was to be delivered. It affirmatively appears that the appellant leased the two tractor-trailer units because he did not have trucks available at the time he leased them, to transport the green tomatoes belonging to his customer.

The language of the foregoing lease agreement is sufficiently broad to give to the appellant the full control and direction of the operation of the tractor-trailer of the respondent for the duration of the trip from Homestead, Florida, to New York City. We think the trial Judge correctly held, in the light of the provisions of the lease and the undisputed evidence, and under the rule announced in the cases heretofore cited, that the relationship of employer and employee existed between the driver of the

leased tractor-trailer unit and the appellant. The driver thereof was the servant of the appellant for the duration of said lease because the appellant had the right to control and direct the driver.

We think the trial Judge properly held that the appellant was liable to the respondent for the property damage sustained by her.

The exceptions of the appellant are overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.