## 1261

Donald R. ALLEN, et al., Respondents v. COLUMBIA FINANCIAL MANAGEMENT, LTD., et al., Defendants, of whom Hochman, Salkin and DeRoy, Jacob Shearer and Shearer and Rudich are Appellants. Appeal of HOCHMAN, SALKIN AND DeROY.

(377 S. E. (2d) 352)

Court of Appeals

*Thomas R. Gottshall* and *Robert W. Buffington* of *Sinkler & Boyd,* Columbia, and *Donald L. Ferguson* of *Haynsworth, Marion, McKay & Guerard,* Greenville, *for appellants.*

*R. David Massey* and *B. Joel Stoudenmire* of *Brown & Hagins,* Greenville, *for respondents.*

*John P. Freeman,* Columbia, *for amicus curiae.*

Heard June 13, 1988.

Decided Dec. 5, 1988.

*Per Curiam:*

Donald R. Allen and others sued the law firm of Hochman, Salkin, and DeRoy, Jacob Shearer, and the law firm of Shearer and Rudich and others on causes of action arising out of the marketing of video and computer game leases. The appellants, who are all California residents, moved under Rule 12(b), S. C. R. Civ. P., to dismiss for lack of personal jurisdiction. The trial court denied their motions to dismiss and they appealed. We reverse the order as to Jacob Shearer, and Shearer and Rudich; however, we affirm in part as to Hochman, Salkin and DeRoy.

A brief description of the marketing plan provides a background to the respondents' causes of action. The respondents invested in leases of master reproduction devices, each of which contained a program. From the master, reproductions could be made and then sold to retail establishments. By acquiring these leases, the respondents expected to make a profit from the sale of the reproductions as well as to realize a tax benefit.

The respondents allege the leases have no value and have yielded neither substantial income nor tax benefit.

They assert causes of action against all defendants for violation of the South Carolina Uniform Securities Act (the Act),[1] fraud, conspiracy, violation of the South Carolina Unfair Trade Practices Act,[2] and unjust enrichment.

Because the appellants have challenged personal jurisdiction, the respondents bear the burden of showing the existence of personal jurisdiction. *Yarborough and Co. v. Schoolfield Furniture Industries, Inc.*, 275 S. C. 151, 268 S. E. (2d) 42 (1980). At this pretrial stage of determining jurisdiction, the respondents need only make a *prima facie* showing by pleadings and affidavits that the trial court should exercise personal jurisdiction over these

---

[1] CODE OF LAWS OF SOUTH CAROLINA, Sections 35-1-10 through -1590 (1976).

[2] CODE OF LAWS OF SOUTH CAROLINA, Sections 39-5-10 through -160 (1976).

appellants. *Askins v. Firedoor Corporation of Florida,* 281 S. C. 611, 316 S. E. (2d) 713 (Ct. App. 1984).

So far as the record shows, Jacob Shearer's involvement is limited to the production of two tax opinions.[3] These are dated June 24, 1983 and were supplied by Shearer to Century Concepts, Inc., a defendant but not an appellant. In the text of the opinions, Shearer consents to the disclosure of the opinions to the advisors of potential lessees of Century Concepts.

In a letter dated August 15, 1983, Hochman, Salkin and DeRoy agreed to provide tax defense services for investors in Century Concepts' program. The agreement contemplated that Century Concepts could disclose that certain tax defense provisions had been made with Hochman, Salkin and DeRoy.

In 1985, Avram Salkin, a member of Hochman, Salkin and DeRoy, came to South Carolina to meet with investors. The meeting took place the day before Salkin was to confer with a representative of the Internal Revenue Service about the tax aspects of the leasing program. The record shows Hochman, Salkin and DeRoy also had telephone contacts with investors involved in these programs.

The record further demonstrates Century Concepts used Shearer's tax opinion and Hochman, Salkin and DeRoy's engagement letter as marketing tools. Affidavits from investors declare the tax opinion and the letter to some extent persuaded them to invest.

## I. JURISDICTION UNDER THE ACT

The trial judge found the appellants had materially aided and participated in the sales and should be treated as sellers under the Act. Liability is imposed on any person who:

(1) Offers or sells a security in violation of subsection (2) of [Section] 35-1-170 or [Section] 35-1-410 or [Section] 35-1-810, or of any rule or order under [Section] 35-1-50 which requires the affirmative approval of sales literature before it is used or of any condition

---

[3] The respondents and the *amicus curiae* agreed at oral argument that no *prima facie* case had been made against Shearer and Rudich. Because of this concession, we dismiss Shearer and Rudich from the case.

imposed under [Section] 35-1-950 or [Section] 35-1-990; or

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission. . . .

Code of Laws of South Carolina, Section 35-1-1490 (1976).

Section 35-1-810 relates to the failure to register securities and provides the basis for the alleged violation of Section 35-1-1490(1).[4] The applicable definitional provision is Section 35-1-20(10), where "sale," "sell," "offer" and "offer to sell" are defined.[5]

No South Carolina case has construed the Act for the purposes of deciding what amount of participation in a sale makes one a seller. *McCall v. Finley*, 294 S. C. 1, 362 S. E. (2d) 26 (Ct. App. 1987). The Act, however, is similar to the Federal Securities Act of 1933, 15 U. S. C., Sections 77a to 77aa (1982).[6] *Id.* In the absence of South Carolina authority,

---

[4] Section 35-1-810 states:

It is unlawful for any person to offer or sell any security in this State unless (a) it is registered under this chapter or (b) the security or transaction is exempted. . . .

[5] Section 35-1-20(10) states:

(a) "Sale" or "sell" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value.
(b) "Offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value.

[6] Section 12 of the federal act as codified in 15 U. S. C., Section 77l states:

Any person who—
(1) offers or sells a security in violation of [the registration and prospectus requirements] of this title, or
(2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him. . . .

we look to federal cases for guidance. *Carver v. Blanford,* 288 S. C. 309, 342 S. E. (2d) 406 (1986).

The United States Supreme Court recently examined ■ federal court of appeals authority that one whose participation is a substantial factor in a buy-sell transaction is a seller within the meaning of Section 12(1) of the federal act. *Pinter v. Dahl,* 486 U. S. ____, 108 S. Ct. 2063, 100 L. Ed. (2d) 658 (1988). *Pinter* held that being a· substantial factor in causing the sale of unregistered securities is not sufficient in itself to render a defendant liable under Section 12(1). The Court wrote:

> There is no support in the statutory language or legislative history for expansion of [Section] 12(1) primary liability beyond persons who pass title and persons who "offer," including those who "solicit" offers.

486 U. S. at ____, 108 S. Ct. at 2080, 100 L. Ed. (2d) at 684.

Section 35-1-1490(1) of our securities act is comparable to Section 12(1) of the federal act. Although South Carolina is not bound to apply constructions of the federal act, we choose to adhere to the principle stated in *Carver, supra.* Accordingly, we apply *Pinter* to this case.

In light of *Pinter,* it is immediately apparent that the record shows no primary liability on the part of the appellants under Section 35-1-1490(1). The record does not suggest that these appellants either passed title or offered or solicited offers.

*Pinter* restricted its scope to Section 12(1) and took no position on the scope of a statutory seller for purposes of Section 12(2) (misrepresentation). *Pinter,* 486 U. S. at ____, n. 20, 108 S. Ct. at 2076, n. 20, 100 L. Ed. (2d) at 679, n. 20. The comparable provision in the Act is Section 35-1-1490(2), quoted above. The operative language ("offers or sells") in the two subsections is identical, both in the federal act and in the state act.

The similarity in statutory language persuades us the ■ same standard applies to both Section 12(1) and Section 12(2) of the federal act. Consequently we see no *prima facie* case that defendants offered or sold a security to the respondents within the meaning of either Code Section 35-1-1490(1) or Code Section 35-1-1490(2).

We, therefore, find no jurisdiction over these appellants under the primary liability provisions of Section 35-1-1490(1) and (2).

The respondents also urge us to find a *prima facie* case, and hence jurisdiction, under the derivative liability provision, Section 35-1-1500.[7] The respondents argue that appellants are employees of the seller, because they were retained by the seller for certain services.

The term "employee is not defined in the Act. Words used in a statute should be given their plain and ordinary meaning unless there is something in the statute that requires a different interpretation. *Multimedia, Inc. v. Greenville Airport Commission*, 287 S. C. 521, 339 S. E. (2d) 884 (Ct. App. 1986). If a term in a statute has a well recognized meaning in law different from its ordinary meaning, the term is presumed to have been used in its legal meaning. *Hughes v. Edwards*, 265 S. C. 529, 220 S. E. (2d) 231 (1975).

The words "employer" and "employee" are outgrowths of the older terms "master" and "servant." *Sun Cab Co. v. Powell*, 196 Md. 572, 77 A. (2d) 783 (1951). The word "servant" is generally synonymous with the word "employee." *Western Indemnity Co. v. Pillsbury*, 172 Cal. 807, 159 P. 721 (1916). The principal factor that makes one an employee, or servant, rather than an independent contractor is the right of the employer, or master, to control and direct the particular work or undertaking as to the means or manner of its accomplishment. *Hutson v. Herndon*, 243 S. C. 257, 133 S. E. (2d) 753 (1963); *Bates v. Legette*, 239 S. C. 25, 121 S. E. (2d) 289 (1961). In this record, there is no indication that these appellants were subject to such control of a seller that they should be deemed employees of the seller under Section 35-1-1500.

---

[7] Section 35-1-1500 states in pertinent part:

Every [employee of] ... a seller [liable under Section 35-1-1490], ... who materially aids in the sale ... [is] also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. ...

We, therefore, find no *prima facie* case for derivative liability under the Act; thus, we find no jurisdiction over the appellants under the Act.

## II. JURISDICTION UNDER A CONSPIRACY THEORY

The trial judge found sufficient allegations and evidence of conspiracy to subject the appellants to jurisdiction in South Carolina under the general long-arm statute, Code of Laws of South Carolina, Section 36-2-803 (1976). Again, we look at the pleadings and affidavits to determine whether a *prima facie* case of conspiracy is made out against any of these appellants.

A civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage. *Lee v. Chesterfield General Hospital, Inc.*, 289 S. C. 6, 344 S. E. (2d) 379 (Ct. App. 1986).

The record shows Shearer prepared tax opinions and agreed Century Concepts could use the opinions for marketing. The appellants allege Shearer knew or should have known the investment scheme was an abusive tax shelter and knowingly issued an incorrect tax opinion. They allege injury in that their investment is now lost and they have not realized a tax benefit.

For a *prima facie* showing of conspiracy, the allegations suffice to invoke the long-arm statute for commission of a tortious act in whole or in part in this state. Section 36-2-803(1)(c).[8]

Having determined the long-arm statute applies, we next decide whether the exercise of jurisdiction over Shearer

---

[8] Section 36-2-803 states:

> (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
>
> \* \* \* \* \*
>
> (c) commission of a tortious act in whole or in part in this State ...
>
> \* \* \* \* \*
>
> (2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him....

satisfies due process. *Ashy v. WeCare Distributors, Inc.*, 289 S. C. 526, 347 S. E. (2d) 123 (Ct. App. 1986).

The threshhold inquiry is whether Shearer purposely availed himself of the privilege of conducting activities in South Carolina. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 472-476, 105 S. Ct. 2174, 2182-2184, 85 L. Ed. (2d) 528, 540-543 (1985). The pleadings and affidavits do not demonstrate that he did so.

It is not enough that other members of the alleged conspiracy have numerous contacts with South Carolina. Due process requires us to examine each appellant's own contacts with South Carolina. *See Rush v. Savchuk*, 444 U. S. 320, 331-332, 100 S. Ct. 571, 578-579, 62 L. Ed. (2d) 516, 526-528 (1980) (due process requires minimum contacts for each defendant). We decline to attribute the contacts of one alleged conspirator to another alleged conspirator. *See Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240, 246, 276 S. E. (2d) 845, 850 (1981) ("To hold that a non-resident who personally has conducted no activity in or with Georgia is subject to our jurisdiction based solely upon the theory of a conspiracy would eliminate the requirement for a 'minimum contact' between that defendant and this forum."). Consequently, we find no jurisdiction over Shearer on a conspiracy theory.

We have noted above that Hochman, Salkin and De-Roy had continuing contact with this investment program. Avram Salkin came to South Carolina to confer with investors. One affidavit alleges he "was sent here to put out any fires from disgruntled investors who may have been concerned about their investment." We find in the pleadings and affidavits a sufficient *prima facie* showing of Hochman, Salkin and DeRoy's participation in a conspiracy to authorize service under our long-arm statute.

Further the record shows that Hochman, Salkin and De-Roy established contacts with South Carolina and knew that Century Concepts had investors in South Carolina. Hochman, Salkin and Deroy, therefore, created continuing relationships and obligations between itself and South Carolina residents. It is presumptively not unreasonable to require it to submit to the burdens of litigation here. *Burger King*, 471 U. S. at 475-476, 105 S. Ct. at 2183-2184, 85 L. Ed. (2d) at

542-543; *Travelers Health Association v. Virginia,* 339 U. S. 643, 647, 70 S. Ct. 927, 929, 94 L. Ed. 1154, 1161 (1950).

Where a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King,* 471 U. S. at 477, 105 S. Ct. at 2184-2185, 85 L. Ed. (2d) at 544. *Burger King* identifies these considerations as "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." 471 U. S. at 477, 105 S. Ct. at 2184, 85 L. Ed. (2d) at 543. The only consideration favoring Hochman, Salkin and DeRoy is the burden of defending in South Carolina. In light of the other considerations, we do not find that burden so compelling that jurisdiction is unreasonable in South Carolina.

We find, therefore, South Carolina may exercise jurisdiction over Hochman, Salkin and DeRoy in the conspiracy cause of action under Section 36-2-803(1)(c).

### III. OTHER GROUNDS

The trial court made no finding under the other causes of action alleged. Consequently we do not address jurisdiction under those causes of action. *See McElveen v. Stokes,* 240 S. C. 1, 12, 124 S. E. (2d) 592, 597 (1962) ("[T]his court should not consider issues not passed upon by the circuit judge."); *Frederick v. Standard Warehouse Co.,* 239 S. C. 216, 122 S. E. (2d) 425 (1961) (Defendant whose demurrer was sustained appealed asserting second ground of demurrer should have been sustained and Supreme Court dismissed because circuit judge had not ruled on second ground).

We reverse the trial judge's finding of jurisdiction under the Act as to all appellants. The finding of jurisdiction on a conspiracy theory we affirm as to Hochman, Salkin and DeRoy and reverse as to Jacob Shearer and Shearer and Rudich.

Affirmed in part and reversed in part.