**CFT SEASIDE INVESTMENT LIMITED PARTNERSHIP, a Virginia limited partnership, Plaintiff,**

v.

**Lewis HAMMET, Defendant.**

**Martin Z. ZAWATSKY and Jay A. Zawatsky, Plaintiffs,**

v.

**Lewis HAMMET, individually and Bethea, Jordan & Griffin, P.A.**

**Civ. A. Nos. 2:90–1337–22, 2:91–1842–22.**

United States District Court, D. South Carolina, Charleston Division.

June 3, 1994.

Daryl Gene Hawkins, A. Camden Lewis, Columbia, SC, David A. Holzworth, Leslie K. Dellon, Rochelle Roca Machem, Washington, DC, for plaintiffs.

Charles J. Baker, III, Keating Lewis Simons, III, Charleston, SC, Wilburn Brewer, Jr., David Clifford Eckstrom, Columbia, SC, for defendants.

## ORDER

CURRIE, District Judge.

This action arises out of a failed real estate development on Hilton Head Island, South Carolina. This matter came before the court on Plaintiffs' Motion to Amend Complaints, Plaintiffs' Motion for Partial Summary Judgment, and Defendants' Motions for Summary Judgment. The court heard oral arguments on these motions on April 28, 1994 and May 16, 1994.

### I. PRIOR RULINGS OF THE COURT

At the conclusion of the hearing on May 16, 1994, the court ordered as follows:

(1) Plaintiffs' Motion to Amend was granted and Plaintiffs were granted leave to file their third amended complaints because there was neither undue prejudice nor additional discovery required as a result of the amended complaints. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986).

(2) Plaintiffs' Motion for Partial Summary Judgment was denied because there were issues of material fact in dispute as to the causes of action on which Plaintiffs sought summary judgment.

(3) Defendants' Motion for Summary Judgment was denied as to all causes of action, except the federal and state securities law causes of action, which were taken under advisement.

After the rulings on May 16, 1994, the remaining matters before the court are the portions of Defendants' Motion for Summary Judgment relating to: (1) Plaintiff CFT Seaside Investment Limited Partnership's federal securities law cause of action pled in its third amended complaint filed with the court on May 16, 1994; and (2) Plaintiffs' South Carolina Uniform Securities Act causes of action as pled in both third amended complaints filed with the court on May 16, 1994. For the reasons discussed more fully below, this court denies summary judgment on the federal securities law cause of action and grants summary judgment in favor of Defendants on Plaintiffs' South Carolina Uniform Securities Act causes of action.

### II. SUMMARY JUDGMENT STANDARD

In deciding a summary judgment motion, the court must look beyond the pleading and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Ins.,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2511–13, 91 L.Ed.2d 202 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, then Plaintiffs must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for Plaintiffs. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of Plaintiffs' cause necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Moreover, production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511.

In other words, summary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees,* 955 F.2d 924, 928 (4th Cir.1992); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). In making its determination under this standard, this court must draw all permissible inferences from the underlying facts in the light most favorable to Plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *McKinney,* 955 F.2d at 928.

### III. FACTUAL BACKGROUND

The following factual background is based on the current record before this court for purposes of summary judgment drawing all permissible inferences from the record in the light most favorable to Plaintiffs.

Plaintiffs are two individual investors and a limited partnership investor in a project ("Seaside Project") to purchase and develop 7.9 acres ("Seaside Property") on undeveloped beachfront real estate on Hilton Head Island, South Carolina. Defendants Lewis Hammet ("Hammet") and Bethea, Jordan & Griffin, P.A. ("BJ & G") are an individual attorney and the law firm in which he was a partner. Defendants assisted Port Royal Cloister Associates and Seaside Ventures Limited Partnership in compiling a Private Placement Memorandum ("PPM") to finance the Seaside Project. Defendants' role was to provide legal services on matters pertaining to South Carolina law required for the Seaside Project, particularly matters concerning real estate law and developmental approval issues. Hammet and BJ & G allegedly were authorized to communicate directly with Jay Zawatsky to provide opinions, information, and advice to him on real estate and developmental approval issues for the Seaside Project. In their third amended complaints filed May 16, 1994, Plaintiffs allege that Defendants violated the South Carolina Uniform Securities Act, S.C.Code Ann. §§ 35–1–1500. *See* Third Amended Complaint (Civil Action 2:90–1337–22) at ¶¶ 191–199; Third Amended Complaint (Civil Action 2:91–1842–22) at ¶¶ 201–209. Plaintiff CFT Seaside Investment Limited Partnership also pleads violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. *See* Third Amended Complaint (Civil Action 2:90–1337–22) at ¶¶ 192–200.

Plaintiffs base these causes of action on the issuance of an opinion letter addressed to the Plaintiffs dated February 8, 1988, an update memorandum dated June 22, 1988, done at the request of Plaintiffs on the eve of their investment, and a June 22, 1988, telephone conversation between Hammet and Jay Zawatsky.

The letter dated February 8, 1988 stated in pertinent part:

This law firm represents Port Royal Cloister Associates and Seaside Ventures Limited Partnership regarding development approval matters. This letter is to confirm that required development approvals have been received for the Seaside Subdivision, and final development approval has been permanently vested by the recording of a subdivision plat, as provided under the law of the Town of Hilton Head Island, South Carolina. Other agency approvals, such as the State Department of Health and Environmental Control and the South Carolina Coastal Council, were all obtained in the process of application before the Town of Hilton Head Island, which requires all other agency approvals as a prerequisite to its developmental approval.

The vested development approval assures the ability of the developer to transfer individual lots as per the recorded plat. The only other approval necessary to construct homes on the individual lots will be individual permits from the Town of Hilton Head Island. The Town of Hilton Head has adopted the Southern Standard Building Code, with slight modifications, so that obtaining building permits is simply a matter of the architect and builder working with the Building Inspection Department of the Town to assure compliance. Other than compliance with the objective standards of the Building Code, no other developmental approval hurdles remain for this project.

Third Amended Complaint (Civil Action 2:90–1337–22) at Exhibit 12; Third Amended Complaint (Civil Action 2:91–1842–22) at Exhibit 11. This letter was addressed to Port Royal Cloister Associates, Seaside Ventures Limited Partnership, and "CFT, Seaside Investments, L.P. c/o Mr. Jay Zawatsky." The letter was later included as Exhibit P— "OPINION OF REAL ESTATE COUNSEL"—TO THE PPM. In a March 23, 1988, memorandum Hammet informed one of his BJ & G partners of the elements of "proposed new state legislation regarding beachfront setback." Third Amended Complaint (Civil Action 2:90–1337–22) at Exhibit 13; Third Amended Complaint (Civil Action 2:91–1842–22) at Exhibit 12. Defendants neither informed Plaintiffs of the proposed legislation nor told them of its possible impact on the Seaside Project at that time. The PPM was finalized and printed March 28, 1988, and then distributed to prospective investors.

The original closing on the Seaside Property was scheduled for June 3, 1988. Jay Zawatsky travelled to Hilton Head for this real estate closing. The closing, however, did not take place because the seller of the property was unable to meet certain requirements. Therefore, Jay Zawatsky entrusted checks for $738,071.59 and $400,000 with Defendants as escrow agents so that the closing could go forward at a later date without Zawatsky's presence. He instructed Defendants to report when they determined that conditions for the closing had been met. At that time Zawatsky would authorize Defendants to deposit the checks held in escrow in order to effect the closing.

On June 3, 1988, Jay Zawatsky learned that the South Carolina General Assembly was about to pass the Beachfront Management Act ("Beach Act") to be effective July 1, 1988. The Beach Act was passed on June 7, 1988. Jay Zawatsky requested that Defendants research and analyze the new legislation and render an opinion prior to the closing on the Seaside Property as to whether the Beach Act would create any approval hurdles for the Seaside Project that would delay its timely development.

On June 22, 1988, the day before the real estate closing, Hammet summarized in a telephone conversation with Jay Zawatsky and in a memorandum faxed to Plaintiffs and others "several recent activities and developments concerning state law and beach protection, particularly as these recent events relate to the Seaside at Port Royal property." Third Amended Complaint (Civil Action 2:90–1337–22) at Exhibit 18; Third Amended Complaint (Civil Action 2:91–1842–22) at Exhibit 17. In the memorandum Hammet represented that he had attended a meeting on June 16, 1988, at which the South Carolina Coastal Council and its professional consulting firm unveiled the preliminary location of new restrictive lines beyond which nothing could be built, in accordance with the Beach Act. Hammet stated that he attended the meeting to learn more about the Beach Act and to view the aerial photographs upon which the new lines had been depicted. Hammet also arranged for Norman Lack, the managing partner of Port Royal Cloister Associates at the time, to view the aerial photographs and report his observations to Hammet.

Based on Hammet and Lack's observations, Hammet described the Beach Act as having no materially adverse impact on the Seaside Project. Hammet said in the memorandum that the dead zone line was the critical line for building purposes and that "the dead zone line, as depicted on the state maps, appeared to fall within the 50′ common area buffer for the Subdivision and did not

encroach on the lots." In his telephone conversation with Jay Zawatsky, Hammet allegedly represented again that the dead zone line was the critical line for building purposes. Hammet stated later in his memorandum: "I confirmed with Jay [Zawatsky] that we were set to close upon the property under these circumstances.... The report from Norman Lack's viewing of the maps was satisfactory to Jay, together with my explanation of the [Beach] [A]ct as outlined above." The closing of the Seaside Property took place on June 23, 1988. The checks in escrow were deposited at Jay Zawatsky's direction. Defendants received approximately $50,000 out of the closing funds for professional services related to the Seaside Project and a percentage of the fees paid to the title insurance agency.

In reliance on the PPM, the February 8, 1988, opinion letter, the June 22, 1988, memorandum, and the June 22, 1988, telephone conversation between Hammet and Jay Zawatsky, CFT Seaside Investment Limited Partnership invested $1.75 million in the Seaside Project by purchasing a limited partnership interest in and making a third mortgage loan to Seaside Ventures Limited Partnership. Hammet drafted the documentation for the third mortgage loan, the third mortgage note, and the loan guarantee. These documents were included in the PPM as an exhibit. Also in reliance on the PPM, the February 8, 1988, opinion letter, the June 22, 1988, memorandum, and the June 22, 1988, telephone conversation between Hammet and Jay Zawatsky, the Zawatskys agreed to invest $400,000 to purchase a promissory note secured by a second mortgage on the Seaside Property. Hammet drafted the documentation for the second mortgage. These documents were included in the PPM as an exhibit.

For purposes of summary judgment and drawing all permissible inferences from the record in the light most favorable to Plaintiffs, the Beach Act imposed additional developmental approval hurdles which adversely impacted on the timely development of the Seaside Project. The delays in the development and marketing of the Seaside Project caused the depletion of the Seaside Project's cash reserves and the Seaside Property was lost to the first mortgage lender. The complaint in Civil Action 2:90–1337–22 was filed on June 18, 1990. The complaint in Civil Action 2:91–1842–22 was filed on June 24, 1991.

## IV. DISCUSSION

The court finds that: (1) Defendants are not entitled to summary judgment on Plaintiff CFT Seaside Investment Limited Partnership's federal securities cause of action because its complaint was timely, but (2) Defendants are entitled to summary judgment on Plaintiffs' South Carolina Uniform Securities Act causes of action because Defendants are liable under neither of the sections of the Act, § 35–1–1490 and § 35–1–1500, cited in Plaintiffs' third amended complaints.

### A. FEDERAL SECURITIES LAW CAUSE OF ACTION

■■■ Defendants moved for summary judgment on Plaintiff CFT Seaside Investment Limited Partnership's federal securities law cause of action based, in part, on a statute of limitations argument.[1] Only the third amended complaint in Civil Action 2:90–1337–22 now pleads violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. Defendants' statute of limitations argument as to this cause of action lacks merit.

Section 27A of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa–1(a) (West Supp.1993), requires that this court apply to § 10(b) and Rule 10b–5 actions filed June 19, 1991, or earlier, the limitations period applicable under the laws of the forum on June 19, 1991. Under § 27A this court must apply the three year statute of limitations found in S.C.Code Ann. § 35–1–1530 to Civil Action 2:90–1337–22, which was filed June 18, 1990. *See Mid–Carolina Oil, Inc. v. Klippel,* 526

---

1. The other reasons for which Defendants moved for summary judgment on the federal securities cause of action involved disputed issues of material fact which could not be resolved by this court at the summary judgment stage.

F.Supp. 694, 696–97 (D.S.C.1981) (applying three year statute of limitations found in § 35–1–1530 to causes of actions pleading violations of § 10(b) and SEC Rule 10b–5), *aff'd.,* 673 F.2d 1313 (4th Cir.), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). The complaint in Civil Action 2:90–1337–22 was filed well within three years of the contract of sale.

Defendants claim that the court should not apply § 27A of the Securities Exchange Act of 1934 because it violates the principle of separation of powers and is unconstitutional. The United States Court of Appeals for the Fourth Circuit, however, has rejected this argument and held that the section is constitutional. *Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256, 1264–65 (4th Cir.1993). Therefore, Defendants' Motion for Summary Judgment as it relates to the federal securities cause of action is denied.

### B. STATE SECURITIES LAW CAUSES OF ACTION

#### 1. Section 35–1–1490

■ Defendants argue that they are not liable under § 35–1–1490 because there is no evidence of record that demonstrates that they were "sellers" for purposes of the South Carolina Uniform Securities Act. The court agrees. Liability under § 35–1–1490 is imposed on any person who:

(1) Offers or sells a security in violation of subsection (2) of § 35–1–170 or § 35–1–140 or § 35–1–810, or of any rule or order under § 35–1–50 which required the affirmative approval of sales literature before it is used or of any condition imposed under § 35–1–950 or § 35–1–990; or

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission....

S.C.Code Ann. § 35–1–1490.

Section 35–1–1490 applies to any person who "offers or sells a security." Section 35–1–1490(2) relates to a seller's untrue statement or omission to state a material fact and provides the basis for Defendants' alleged violations. The applicable definitional provision is § 35–1–20(10), where "sale," "sell," "offer," and "offer to sell" are defined. An "'offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." S.C.Code Ann. § 35–1–20(10)(b). A "'sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value." S.C.Code Ann. § 35–1–20(10)(a).

South Carolina courts have set forth the amount of participation in a sale which makes one a "seller" under § 35–1–1490. *Biales v. Young,* —— S.C. ——, 432 S.E.2d 482 (1993); *Allen v. Columbia Financial Management,* 297 S.C. 481, 377 S.E.2d 352 (Ct.App.1988). It is undisputed that Defendants did not pass title in this case. In *Biales* the Supreme Court of South Carolina adopted the test set forth in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) to determine when someone other than an owner of a security who passes title is a "seller" of a security for purposes of § 35–1–1490. *Biales,* —— S.C. at ——, 432 S.E.2d at 484–85; *see also Allen,* 297 S.C. at 487, 377 S.E.2d at 356 (Court of Appeals of South Carolina adopting *Pinter v. Dahl* test).

■ To be a "person who offers or sells a security" under § 35–1–1490 a nonowner must (1) solicit the purchase and (2) be motivated at least in part by a desire to serve his own financial interest or that of the owner of the security. *Biales,* —— S.C. at ——, 432 S.E.2d at 485. In *Biales* the court held that a seller's attorney does not become a "seller" merely by speaking directly with a buyer to assure the buyer of certain facts relevant to the transaction nor by serving as escrow agent for funds to be released to the seller. *Id.* Such evidence does not show that an attorney "solicited the purchase" of securities. Absent evidence that an attorney persuaded or urged a buyer to purchase securities, an attorney cannot be held liable under § 35–1–1490. *Id.*

This case fits squarely within the holding and facts of *Biales*. Although there is evidence of record that Hammet and BJ & G communicated both orally and in writing with Plaintiffs, assured Plaintiffs of certain facts regarding the transaction, and served a Plaintiffs' escrow agents, there is no evidence that Defendants persuaded or urged Plaintiffs to purchase the securities. It is clear from the holding in *Biales* that Defendants must have persuaded or urged Plaintiffs to purchase the securities to be liable under § 35-1-1490. Just as in *Biales* there is no evidence of record in the present case that Defendants did anything but allegedly provide legal advice to Plaintiffs and serve as Plaintiffs' escrow agents for certain funds associated with the transaction. Defendants may have been the gatekeepers of information critical to Plaintiffs' evaluation of the potential success of the Seaside Project and a substantial factor in causing Plaintiffs to purchase the securities, but that does not transform them into "sellers" under § 35-1-1490. If such were the case, then every professional involved in a securities transaction could be held liable under the South Carolina Uniform Securities Act. The Supreme Court of South Carolina has expressly rejected such a result. *See Biales*, —— S.C. at ——, 432 S.E.2d at 485. Therefore, Defendants are not liable under § 35-1-1490.[2]

### 2. Section 35-1-1500

 Defendants argue that they are not liable under § 35-1-1500 because there is no evidence of record that demonstrates that Defendants fall within a category of persons who may be held liable under the section. The court agrees. Without explaining under what category Defendants fall, Plaintiffs allege that Defendants are liable under the derivative liability provision of the South Carolina Uniform Securities Act, S.C.Code

Ann. § 35-1-1500. Section 35-1-1500 provides in pertinent part:

> Every person who directly or indirectly controls a seller liable under § 35-1-1490, every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller. . . .

S.C.Code Ann. § 35-1-1500.

It appears that Plaintiffs' arguments to impose liability upon Defendants are that Defendants must be deemed to have been "employees" or "agents" of the seller within the meaning of § 35-1-1500. The court finds these arguments without merit. As to the employee argument, the Court of Appeals of South Carolina in *Allen v. Columbia Financial Management*, 297 S.C. 481, 377 S.E.2d 352 (Ct.App.1988) set forth the criteria to determine whether an attorney is an "employee" of a seller for purposes of § 35-1-1500. In *Allen* the court held that "[t]he principal factor that makes one an employee, or servant, rather than an independent contractor is the right of the employer, or master, to control and direct the particular work or undertaking as to the means or manner of its accomplishment." *Allen*, 297 S.C. at 488, 377 S.E.2d at 356-57 (citing *Hutson v. Herndon*, 243 S.C. 257, 133 S.E.2d 753 (1963); *Bates v. Legette*, 239 S.C. 25, 121 S.E.2d 289 (1961)). As in *Allen*, there is no evidence of record to indicate that Defendants were subject to such control by the seller that they should be deemed employees of the seller under § 35-1-1500.

As to the agency argument, it is true that the attorney-client relationship is generally one of agency. The definition of "agent" in

2. There is evidence of record that: (1) Defendants accrued substantial unpaid fees for services performed regarding the Seaside Project and that they may not have been paid unless the transaction closed; (2) Defendants expected to obtain fees for issuing title insurance if the transaction closed; and (3) Defendants anticipated that if the transaction closed they would continue as real estate counsel for the Seaside Project in which capacity they could earn future fees as the

Seaside Project developed. These facts do not alter the court's conclusion that Defendants are not "sellers" under § 35-1-1490. These facts only address the second prong of the *Pinter/Biales* test—Defendants' financial interest. These facts are not relevant to the first prong—whether Defendants solicited Plaintiffs. There is no evidence of record that Defendants solicited Plaintiffs to purchase securities.

the Act and the references to the term "agent" in the Act, however, clearly reflect an intention by the South Carolina General Assembly to alter the common law definition of agent for purposes of § 35–1–1500. Section 35–1–20(2) defines "agent" as:

any individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities.... A partner, officer or director of a broker-dealer or issuer, or a person occupying a similar status or performing similar functions, is an agent if he or she is within this definition.

S.C.Code Ann. § 35–1–20(2). The definition of "agent" in § 35–1–20(2) does not include attorneys who merely render legal advice or draft documents for use in securities transactions. The definition covers persons who assist directly in offering securities for sale, soliciting offers to buy, or performing the sale, but who do not fit the definition of broker-dealer. It is not intended to cover professionals such as attorneys engaging in their traditional advisory functions. This is shown by § 35–1–410 which provides: "It is unlawful for any person to transact business in this state as a broker-dealer or agent unless so licensed under this chapter." S.C.Code Ann. 35–1–410. Nowhere does Title 35 require attorneys who merely advise persons involved in a securities transaction to be licensed before providing that advice. Nor do the regulations of the South Carolina Secretary of State, Securities Division. *See* S.C.Code Regs. 113–1 to–26 (1993). Therefore, Defendants are not liable as "agents" under § 35–1–1500.

## V. CONCLUSION

For these reasons, this court denies Defendants' Motion for Summary Judgment on Plaintiff CFT Seaside Investment Limited Partnership's federal securities cause of action and grants Defendants' Motion for Summary Judgment on Plaintiffs' South Carolina Uniform Securities Act causes of action as pled in the Third Amended Complaints filed on May 16, 1994.